**Vernon PHILLIPS and Margaret Phillips, his wife, and as mother and next friend of Linda Phillips Morris, formerly Linda Phillips, Plaintiffs,**

**v.**

**GLENS FALLS INSURANCE COMPANY, a corporation, Defendant.**

**Civ. A. No. 3312.**

United States District Court
S. D. West Virginia,
Charleston Division.

Aug. 19, 1968.

J. Campbell Palmer III, Charleston, W. Va., for plaintiffs.

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., for defendant.

### MEMORANDUM OPINION

FIELD, Chief Judge.

The facts relative to this case were in large part stipulated. The events giving rise to it commenced on December 16, 1962, when an insured (William G.

---

7. Jones Towing, Inc. v. United States, 277 F.Supp. 839 (ED La.–1967).

White) of Glens Falls Insurance Company (defendant) was involved in an automobile accident. With the insured at the time of the accident was an 18 year old infant girl, Linda Phillips, now Linda Phillips Morris, one of the plaintiffs in this action. The accident occurred on Route 75 in Wayne County, West Virginia, and involved a 1963 Chevrolet Corvette automobile, insured by the defendant company under defendant's automobile insurance policy number FD 54-99-92.

Condition number 5 of this insurance policy provided as follows:

"The insured shall co-operate with the company and upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

In this accident, the infant Linda, whose father and mother, Vernon Phillips and Margaret Phillips, are also plaintiffs in this action, was seriously injured. She suffered a brain concussion, brain injury, a fractured femur, and other injuries. As a result of these injuries, she has required a substantial amount of medical treatment, including hospital confinement.

As a result of this accident and the injuries suffered by Linda Phillips, suit was instituted by Linda and her parents in early 1964, in the Circuit Court of Wayne County, against the insured, William G. White. This action came to trial in that court on March 29, 1965, and on March 31, 1965, a jury returned a verdict awarding Linda Phillips the sum of $10,000.00 and her father, Vernon Phillips, the sum of $2,000.00. Pur-

suant to this verdict, a judgment order was entered by the court on May 15, 1965, with legal interest to accrue from the date of the verdict until paid.

Upon the failure of the defendant insurance company to pay the judgments, this action was instituted. The defendant company alleges that White violated and breached the so-called "co-operation clause" of the policy, set forth above, and accordingly it is relieved of any obligation which might otherwise rest upon it as a result of the judgments. The events subsequent to the accident bearing upon this allegation by the defendant company are set forth below.

Following the accident, on December 27, 1962, White was charged in Wayne County, West Virginia, with unlawfully operating his automobile in that county, and so doing both carelessly and in wanton and wilful disregard for the safety of person or property, all in violation of the laws of West Virginia. On that date, White pleaded guilty to the charges and paid the assessed fine and costs.

The defendant company was given prompt notice of the fact that the accident had occurred. It then conducted an investigation of the facts and circumstances surrounding the accident, the injuries suffered by the plaintiff, Linda Phillips, and the aforementioned plea of guilty. In conducting such investigation, plaintiffs' attorney gave defendant company the necessary consents to review appropriate medical records in order that it might determine the extent of the injuries suffered by Linda Phillips.

After some delay in securing information from White, the defendant company directed a letter to him, dated October 22, 1963, explaining the possible consequences, under the applicable provisions of the insurance policy, of a failure on his part to co-operate with the company. On November 9 and 11, 1963, White gave full and comprehensive statements to defendant's adjustment bureau, relat-

ing to the circumstances leading up to and surrounding the accident. Although irrelevant to the legal issues to be determined in this case, these statements, among others, and testimony admitted at the trial in Wayne County, reflect an intimate relationship, prior to the accident of December 16, 1962, between White and the infant plaintiff.

Suit was first instituted by plaintiffs in the Circuit Court of Cabell County, West Virginia, which suit was dismissed for lack of venue. Later, in early 1964, as mentioned above, an action was brought in the Circuit Court of Wayne County, West Virginia. The insured here, White, who prior to December 1962 worked and lived in the Huntington, West Virginia, area, had since moved to Nashville, Tennessee, and was personally served through the Auditor of the State of West Virginia under the West Virginia nonresident motorist statute, such service being received by him on January 10, 1964.

On February 19, 1964, the defendant company advised White, through Mr. Jenkins, its Huntington attorney retained to defend the case, that the company would afford White a defense in the action. It additionally reminded him of the need for his co-operation in the matter.

Although depositions were taken from the plaintiffs relative to this matter, no deposition was taken from Mr. White, even though counsel for the plaintiffs attempted to make arrangements with counsel for defendant to do so. Plaintiffs' counsel offered to take this deposition outside of West Virginia, since a warrant was outstanding against White in this State on a misdemeanor charge of contributing to the delinquency of a minor.

After the trial in Wayne County had been finally set for March 29, 1965, the defendant's attorney, Mr. Jenkins, on March 4, 1965, so advised White by letter. By coincidence, on that same date, White telephoned Mr. Jenkins and was advised orally of the trial date. Mr. Jenkins testified that during the tele-

phone conversation of that date, he advised White that Jenkins would be in Florida for a short while and would stop in Nashville on his return trip to Huntington and discuss the pending trial with White.

On March 10, 1965, White sent a letter to Jenkins in which he indicated his intention to co-operate fully in regard to the matter and to be on hand at the trial. In addition, White demanded in this letter that the defendant company make a settlement of the plaintiffs' claims. He indicated that he understood an offer of settlement, within the limits of the insurance policy, had been made by the plaintiffs. White further indicated in this letter that he considered himself to be at fault in the accident, and consequently liable to the plaintiffs on their claims.

On March 15, 1965, while Jenkins was still in Florida, White appeared at the office of Jenkins' law firm in Huntington. Upon being advised of Jenkins' absence, White asked to talk with one of the other attorneys in the firm relative to the upcoming trial. He was advised by a member of the firm that such was not possible, since Jenkins had the file on the case with him in Florida. Mr. Jenkins later received a letter from White advising him of White's visit to the office, and again setting forth his intention to co-operate in the matter of the pending action.

Upon his return from Florida, on March 20 or 21, 1965, Jenkins was unable to contact White in Nashville, and the proposed meeting between the two failed to materialize. Jenkins subsequently telegraphed White in Nashville, advising him to be in Huntington on March 27, 1965, for a conference between them regarding the upcoming trial. On the date set for the conference White telephoned Jenkins, advising that he was not feeling well and expressing doubts as to whether he would be able to be present at the trial. Jenkins suggested that White see a doctor, and, if he was sick, to have the doctor report that fact to Jenkins.

The next day, March 28, Jenkins received a telegram, purportedly from a Dr. Zimmerman, indicating that White was ill. Efforts by Jenkins to confirm this by telephone conversation with Dr. Zimmerman were unsuccessful, since he was unable to locate a doctor by that name in Nashville. Jenkins did determine that a medical student by that name had once attended school in Nashville. The record does not reflect any further effort on the part of Jenkins to contact White concerning his illness. Information developed subsequent to the trial leads to the conclusion that the telegram was in fact fraudulent, and was sent by White. The Dr. Zimmerman involved here was, according to White, a friend of his and was in Nashville on March 28 on leave from the United States Army. Information obtained from Dr. Zimmerman reflects that the doctor was in Germany on duty with the army at the time the telegram was sent, and that he had no knowledge of the telegram.

White failed to show up for the trial in Wayne County set for March 29, 1965. Jenkins then moved for a continuance in the case, which was denied. The trial then proceeded to take place, with Jenkins attempting to reserve the company's rights, and represent the company only, and not White. In so doing, Jenkins advised the court that the insurer was proceeding with the action only in defense of its own interests, and, that it was reserving any right to deny coverage which might have accrued to it as a result of White's conduct.

During the trial, Jenkins alleged contributory negligence on the part of the infant, Linda. This was based upon evidence to the effect that Linda encouraged White to drive fast, and in addition refused to wear a seat belt. In arguing the case to the jury, plaintiffs' attorney commented on the fact that White was not present at the trial. Typical of these comments were that White "was hiding in Tennessee," and "he wouldn't come into court and tell you about it."

As previously stated, this trial resulted in a verdict of $10,000.00 for Linda and $2,000.00 for her father. The defendant company refused to pay these sums, alleging White's actions constituted nonco-operation, and breached the provisions of the insurance policy and this action followed.

It is quite obvious that White wanted to avoid attendance at the trial in Wayne County, and in an attempt to justify his absence, he actually sent a fraudulent telegram, purportedly from a doctor, to the effect that he was ill. A review of the transcript of the trial, however, makes it equally clear that the defendant company was not prejudiced by White's absence. Indeed, it would appear that his presence at the trial might have influenced the jury to return more substantial verdicts against White. The record indicates that the trial judge would have permitted plaintiffs' counsel to elicit testimony bearing upon the relationship between White and the infant plaintiff which would have colored the jury's attitude toward White, and which, to some degree at least, would have been reflected in the verdicts.

The defendant, however, takes the position that the failure of White to attend the trial was nonco-operation *per se* which breached the terms of the policy and relieves it from any further obligation thereunder. The plaintiffs' counsel, on the other hand, points out that aside from his absence from the trial, White co-operated fully in the investigation of the case; that the record shows that White's liability to the plaintiffs was clear and that under these circumstances White's alleged nonco-operation was not of such a prejudicial or material nature sufficient to excuse the company from its policy obligations.

There is no West Virginia decision on this point, and, accordingly, in this diversity case the Court is called upon to make an "Erie-educated guess." Defendant suggests that it would be appropriate to follow the Virginia case law on this subject as developed in Cooper v.

Employers Mutual Liability Ins. Co., 199 Va. 908, 103 S.E.2d 210 (1958), which held under facts not dissimilar to the present case that it was not essential for the insurer to show prejudice in order to establish the defense of nonco-operation. This position of the Virginia courts was recognized and followed by the Fourth Circuit in Grady v. State Farm Mutual Auto. Ins. Co., 264 F.2d 519 (4th Cir.1959).

Plaintiffs contend, however, that the Virginia position does not comport with the weight of authority on this point. Virginia's minority posture in this area of the law was recognized by Judge Dalton in Mayflower Ins. Co. v. Osborne, 216 F.Supp. 127 (W.D.Va.1963), wherein he stated that the majority rule in this country was that prejudice to the insurer must be shown. The opinion adverts to an annotation in 60 A.L.R.2d 1146, which states at 1149:

> "While a few courts have taken the view that liability policy clauses requiring the insured to co-operate in the defense of actions under the policy by attending the trial and testifying where requested to do so are to be construed strictly and in accordance with their plain terms, so that an insurer may escape liability by merely showing a failure or refusal to attend or testify, it appears to be the view of the great majority of the courts that such clauses require only reasonable co-operation, and that a material breach must be shown before the insurer will be excused."

In addition, on p. 1154,

> "Most of the courts considering the question have held or stated that prejudice must be shown by the insurer before the insured's failure to attend the trial will be regarded as a material breach of the condition requiring the insured's co-operation."

This majority rule is also recognized in 29A Am.Jur. Insurance, Section 1472:

> "A wide divergence of opinion exists as to whether prejudice is neces-sary in order to enable an insurance company to avoid liability where there is some failure to co-operate by the insured. A majority of courts support the view that to constitute a breach of the policy, the insurer must show in the particular case that it was substantially prejudiced or injured by the failure to co-operate."

■ In my opinion, our West Virginia Court would elect to follow the majority position on the question. In explicating the law of South Carolina which follows the majority rule on this point, Judge Sobeloff observed in Pennsylvania Threshermen & F. M. Cas. Ins. Co. v. Owens, 238 F.2d 549, at 550 (4th Cir. 1956):

> "* * * Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. * * *"

It would seem that where innocent third parties are involved and would otherwise suffer, and where there is little, if any, question relative to the assured's liability, the insurance company should not be permitted to deny liability based upon an alleged policy breach that is considerably less than material or prejudicial.

■ While the foregoing is dispositive of this case, I am of the opinion that, in any event, the defendant waived its defense of nonco-operation under the policy when its attorney went forward with the defense of the Wayne County action in the absence of White.

The general principle is stated in 7 Am.Jur.2d Automobile Insurance, Section 184 (1963):

> "The general rule supported by the courts is that an automobile liability insurer which learns before the trial of an action against its insured that the insured has breached the co-operation clause of the policy, and nevertheless defends him at the trial, thereby waives or is estopped to assert the insured's nonco-operation, in a subse-

**156**

quent action to recover on the policy. This rule has been applied in a number of cases in which the insured failed to appear at the trial of the original action brought against him, and where the insurer conducted the defense of the insured in his absence; * * *."

In support of the above statements, Annot., 70 A.L.R.2d 1197, 1205 (1960) reflects that

"In a number of cases in which the insured under an automobile liability insurance policy failed to appear at the trial of the original action brought against him, and the insurer conducted the insured's defense in his absence, it was held that the insurer thereby waived or was estopped to assert this lack of co-operation by the insured, in a subsequent action on the policy."

There are no West Virginia decisions relative to this issue. There are Virginia cases, however, and these seem to follow the "majority view" regarding this issue, as set forth above. In Cooper v. Employers Mutual Liability Ins. Co., supra, the Court cited Fentress v. Rutledge, 140 Va. 685, 125 S.E. 668 (1924), as support for a statement that

"When the insurer under an indemnity policy has knowledge of a breach of its terms by the insured and continues in the defense of the case without giving notice to the insured that it is reserving any right to deny its ultimate liability, the insurer is thereafter estopped to avoid liability under the policy on such grounds."

In the light of these authorities, it is my conclusion that the conduct of the defendant company in the Wayne County trial constituted a waiver of the non-co-operation defense and it is now estopped to raise that defense against the claims of the plaintiffs in this action.

This opinion will be filed in lieu of Findings of Fact and Conclusions of Law and counsel may prepare an appropriate order.