481 P.2d 131 (1970)
Barbara J. BROOKS, Plaintiff in Error,
v.
Robert E. HAGGARD, Defendant, and
Alliance Mutual Casualty Company, a foreign corporation, Garnishee, Defendants in Error.
No. 70-322, (Supreme Court No. 23132.)
Colorado Court of Appeals, Div. II.
October 14, 1970.
Rehearing Granted November 4, 1970.
On Rehearing December 22, 1970.
Certiorari Denied March 1, 1971.
*132 McLean & McLean, Robert E. McLean, Marjorie W. McLean, Denver, for plaintiff in error.
Duane O. Littell, Ronald C. Hill, Denver, for defendant in error Alliance Mutual Cas. Co.
Not Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This case arises out of a garnishment action brought by Barbara J. Brooks (plaintiff) against Alliance Mutual Casualty Company (Alliance). Plaintiff had previously obtained a judgment against defendant, Robert E. Haggard (Haggard), in a personal injury action arising out of an automobile accident. Alliance answered the writ of garnishment by stating that although it had issued an automobile insurance policy covering Haggard and his employer, it was not liable to Haggard because he had breached the policy prior to judgment by his failure to cooperate with Alliance, nor was it liable to his employer, whose truck Haggard was driving with permission at the time of the accident, because the employer had been dismissed from the action by agreement of the parties.
Plaintiff replied, in traverse to Alliance's answer, that Haggard had cooperated fully with Alliance, and that the latter was estopped to deny coverage. After a full hearing on the matter, the trial court entered judgment in favor of Alliance and held that Haggard had breached the "cooperation" clause of the policy. Plaintiff thereafter took appeal.
The contract clauses which are pertinent to this appeal are as follows:
"CONDITIONS.
"12. Assistance and Cooperation of the Insured: The insured shall cooperate with the company and, upon the company's request, shall attend hearings and *133 trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.
* * * * * *
"13. Action Against Company: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."
The principal question for the trial court was whether or not Haggard had breached the "cooperation" clause of the policy to the extent that Alliance was not required by law to pay the judgment against him in favor of plaintiff.
Some facts are not in dispute: The accident giving rise to plaintiff's claim against Haggard occurred at an intersection in July of 1963. After suit was filed against Haggard and his employer, they contacted Alliance, to whom Haggard then gave a written statement that he was driving his employer's truck at the time of the accident; that he had stopped for a red light at the intersection; and that after the light had changed to green, he proceeded into the intersection whereupon he was struck by plaintiff's vehicle, which had run a red light. He further stated that plaintiff had admitted, in his presence, to running a red light.
A pretrial conference was held in December, 1963, at which time it was agreed that both Haggard and his employer were covered under the policy issued by Alliance and that the employer could be dismissed from the lawsuit. Trial was then set for October 28, 1964.
Alliance had retained counsel to represent Haggard; however, when plaintiff requested that Haggard's deposition be taken, neither Haggard's attorney nor Alliance could locate him, although their attempts to do so were not particularly diligent. Plaintiff, however, was successful in locating him in California and informed Alliance of his whereabouts. Twenty-one days before trial, representatives of Alliance finally did contact Haggard in California and arranged for him to fly to Denver for the trial. He was instructed to contact his attorney in Denver on the day before the trial and was given the attorney's name, address, and phone number. They provided him with a draft payable to an airline to cover his transportation and a draft for $45 to cover his lodging and other expenses until he met with his attorney in Denver.
Four days before trial, however, Haggard decided that he would rather drive to Denver, and so informed Alliance. Although he was told that since it was a Saturday they could not obtain other funds for him, Haggard nevertheless decided to drive anyway, and accepted the draft for $45 while returning the draft for his air transportation.
From this point on, the evidence and the inferences to be drawn therefrom are disputed: Haggard maintained that he left his home in California late that Saturday night or early the following morning, but experienced car trouble between Sacramento and Reno, and that he used all his available funds to have the car repaired and then returned to his home. He also maintained that he did not return to work until the following Wednesday, because of the illness of his wife, but that he did call the office of Alliance's representatives and left word that he had not gone to Denver.
Alliance, however, introduced evidence from which it might have been inferred that Haggard actually arrived in Denver and called his attorney on the evening prior to trial, informing the latter that he would meet with him early the following day, before trial, to discuss the case. He did not appear at trial the following day, however, and his attorney diligently searched for him, unsuccessfully, in the Denver *134 area, after which a check was made with Alliance's California representatives who stated that so far as they knew Haggard had left for the trial. Evidence was also introduced that Haggard did not contact Alliance's representatives in California after his purported return to his home because of car trouble.
On both days of trial, Haggard's attorney moved for continuance and also that he be allowed to withdraw as counsel because of Haggard's failure to appear for trial. These motions were denied and trial was held without Haggard, resulting in judgment against him.
The problem of an insured's absence from trial has not been previously dealt with in the law of this state. Although some states hold that absence from trial, in and of itself, is sufficient to substantiate a claim of noncooperation, the majority and better rule appears to be that when the driver of an automobile breaches his insurance contract by failing to appear, the insurer is not prejudiced, as a matter of law, by that naked fact alone, and that no presumption to the contrary arises to aid the insurer. Farley v. Farmers Insurance Exchange, 91 Idaho 37, 415 P.2d 680; Thrasher v. U. S. Liability Insurance Co., 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503. It is established law in Colorado that in interpreting a "cooperation" clause of an insurance policy, there must be some disadvantage to the insurer proved, and that disadvantage must be material and substantial. Farmers Automobile Inter-Insurance Exchange v. Konugres, 119 Colo. 268, 202 P.2d 959; see also Fulkerson v. Iowa Home Mutual Casualty Co., 150 F.Supp. 663.
Whether or not the "cooperation" clause has been breached, however, is a matter of fact. We observe in our review of cases decided on this subject that each usually turns on its particular facts, and that there are usually several factors involved in the final determination of each. Seldom does the excuse for absence, diligence of the insurer, or the materiality, individually control; instead, they are weighed with all other material factors in the case, with the ultimate determination left for the trier of fact. Farmers v. Konugres, supra; Pawlik v. State Farm Automobile Insurance Co., 302 F.2d 255; Panhans v. Associated Indemnity Corp., 8 Cal. App.2d 532, 47 P.2d 791; 13-14 X. Huddy Cyclopedia of Automobile Law, § 298 (9th ed.). However, if, after consideration of all factors involved, it appears that the presence of the insured or his testimony was so potentially valuable as to have materially affected the outcome of the trial, then his nonappearance is regarded as a material or prejudicial breach of the policy. Roberts v. Commercial Standard Insurance Co., 138 F.Supp. 363; O'Morrow v. Board, 27 Cal.2d 794, 167 P.2d 483; American Policyholders Insurance Co. v. Michota, 156 Ohio St. 578, 103 N.E.2d 817; Howell v. Frost, 98 Ohio App. 127, 128 N.E.2d 189.
Although the trial value of Haggard's testimony was disputed in the instant case, since he stated shortly before trial that he recalled very little about the accident, the record shows the existence of a written statement taken shortly after the accident, which could have been used to refresh his memory prior to his testimony at trial. Accordingly, we cannot say, as a matter of law, that his absence was not material to the outcome of the trial.
Since this issue was one of fact for the trial court as trier of fact, and since its determination was based upon evidence in the record, we will not disturb it on review. Seib v. Standley, 164 Colo. 394, 435 P.2d 395; Farmers v. Konugres, supra.
Plaintiff, as garnisher, had no greater rights than Haggard under the policy, and since the latter was not entitled to benefits under the policy under the circumstances of this case, neither is plaintiff. Jorgensen v. St. Paul Fire & Marine Insurance Co., 158 Colo. 466, 408 P.2d 66; General Accident Fire & Life *135 Assurance Corp. v. Mitchell, 128 Colo. 11, 259 P.2d 862.
Plaintiff argues that Certified Indemnity Co. v. Thun, 165 Colo. 354, 439 P.2d 28, supports her position. We cannot agree. In that case, the insured allegedly failed to give notice of an accident "as soon as practicable" after the accident occurred. We are unable to see how the rulings in that case, or the fact situation involved, aid the plaintiff here.
Plaintiff also contends that since Alliance conceded that Haggard was at one time insured under the policy, they were estopped from denying that at a later time, on the grounds given, after plaintiff had dropped Haggard's employer as a party to the suit.
In the factual context before us,
"The elements of estoppel by acts or representations are reliance by a person entitled to rely on the acts and representations, the misleading of such person, and, in consequence, a change of position to his detriment, so that the person responsible for the misleading will not be permitted to deny the truth of his own statements, express or implied." Ballentine's Law Dictionary 421 (3rd ed.)
There was clearly no misrepresentation at the time the employer was dismissed from the case by Alliance. The breach of contract now relied upon by the insurer had not yet occurred. Plaintiff's estoppel argument must therefore fail.
Judgment is affirmed.
DWYER and ENOCH, JJ., concur.

ON REHEARING
PIERCE, Judge.
The original opinion of this Court was announced on October 14, 1970, and rehearing was granted on November 4, 1970.
Upon complete review of the supplemental briefs submitted and upon reconsideration of our original opinion, we rule that our original opinion shall stand unmodified and the judgment of the trial court remains affirmed.
DWYER and ENOCH, JJ., concur.