**The CINCINNATI INSURANCE COMPANY, Plaintiff,**

v.

**Derek W. IRVIN, Missy Hodge–Irvin, Patricia J. Brashear, Loretta Huff, and Sentry Insurance, Defendants.**

**No. IP 97–0380–C H/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 19, 1998.

Arlene Rochlin, Berlon & Timmel, Indianapolis, IN, for Plaintiff.

William N. Ivers, Stewart & Irwin, Indianapolis, IN, for Defendants Derek Irvin, Missy Hodge–Irvin and Sentry Ins.

J. David Hollingsworth, Hollingsworth Meek Miller & Minglin, Indianapolis, IN, for Defendants Derek W. Irvin and Missy Hodge–Irvin.

Ralph Bailey, Patricia Brashear and Loretta Huff, pro se.

### ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

Under most automobile liability insurance policies, a person who has permission to drive a covered vehicle is treated as an insured person who is entitled to coverage. Most such liability policies also require an insured person to cooperate with the insurance company in investigating and defending claims. In this case the driver of one car in a two-car accident was not the named insured, but she had been given permission to drive the car. The driver therefore was insured under the policy that covered the car. This case is a little unusual because after the collision, the driver fled the scene and has not been heard from since. Neither the insurer nor any other person interested

in the matter has been able to find her. The issue presented is whether the driver's flight and disappearance amount to a breach of the policy's cooperation clause that relieves the liability insurer of what would otherwise be its obligation to defend and indemnify the driver in the tort actions by those injured in the accident.

The case arose from a collision between a car driven by defendant Loretta Huff and a car driven by defendant Derek W. Irvin. Huff was driving a car insured by plaintiff The Cincinnati Insurance Company under a policy issued to the car's owner, defendant Patricia J. Brashear. Cincinnati Insurance seeks a judgment declaring that it has no duty to defend or indemnify Huff for liability arising from the accident. Cincinnati Insurance seeks summary judgment on the ground that Huff materially breached the policy's cooperation clause. Under Indiana law an insurer must prove the following elements to defeat coverage based on a failure to cooperate: (1) that the insurer exercised good faith efforts and diligence in obtaining the insured's cooperation; (2) that the insured's failure to cooperate was willful and intentional; and (3) that the insured's breach of her duty to cooperate prejudiced the insurance company. As explained below, when the evidence is viewed in the light reasonably most favorable to defendants, a reasonable jury could find that Cincinnati Insurance has not satisfied this burden. Cincinnati Insurance has not shown that Huff has willfully and intentionally failed to cooperate in defending against claims of which she has no actual knowledge, nor has it shown that Huff's disappearance has caused (or will certainly cause) prejudice to the insurer. Accordingly, the court denies Cincinnati Insurance's motion for summary judgment.

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if and only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This court's Local Rule 56.1 requires parties moving for summary judgment to include a "statement of material facts" that includes citations to the relevant record materials. Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Not all factual disagreements are material. Factual disagreements that are irrelevant or immaterial under the applicable substantive law do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Local Rule 56.1, a party opposing the motion must identify specific and material factual disputes. In making this showing, a party opposing the motion may not rely merely on assertions in pleadings to establish a genuine issue, but must come forward with evidence that would be admissible at trial. *Collier v. Budd Co.*, 66 F.3d 886, 892 & n. 8 (7th Cir.1995).

In reviewing the parties' submissions, the court must consider the evidence in the light reasonably most favorable to the non-moving parties, in this case the defendants. However, the existence of some "metaphysical doubt" does not create a genuine issue of fact. The issue is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should neither "look the other way" to ignore genuine issues of material fact, nor "strain to find" material factual issues where there are none. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1363–64 (7th Cir.1988). Summary judgment is not a substitute for a jury's determinations about credibility or about whether a reasonable inference should be drawn from circumstantial evidence of a person's intentions.

### Undisputed Facts

Based on this standard, the following facts are either undisputed or reflect the evidence in the light reasonably most favorable to defendants. Plaintiff Cincinnati Insurance issued a homeowner's automobile liability insurance policy identified as policy number HRA 6658947C to defendant Patricia Brashear. See Pl.Ex. 1. This policy provided coverage for a 1977 Plymouth Grand Fury owned by Brashear with effective dates of July 7, 1994, to July 7, 1995. See *id.*

On November 19, 1994, Brashear gave permission to her son, Ralph D. Bailey, to drive the insured car. See Bailey Aff. ¶¶ 4, 5. Bailey later permitted Loretta Huff to drive the car while Bailey rode in the car as a passenger. See *id.* at ¶¶ 2, 3, 5. While driving in Frankfort, Indiana, Huff collided with a car driven by defendant Derek Irvin, in which defendant Melissa Hodge–Irvin was a passenger. See Irvin Dep. 11–13; Hodge–Irvin Dep. 15. The Irvin car was insured by defendant Sentry Insurance Company, which also provided uninsured motorist coverage.

The central fact in this case is that immediately after the collision, Huff fled the scene without giving anyone her name or any information about her address, and neither Cincinnati Insurance nor any defendant has had any contact with her since then. See Bailey Dep. 9 (1996); Bailey Dep. 31 (1995); Irvin Dep. 34; Hodge–Irvin Dep. 47. Cincinnati Insurance has made extensive efforts to locate Huff. First it placed a personal advertisement in local newspapers and questioned individuals at the establishment where Bailey and Huff met. See Cunningham Aff. ¶¶ 6–7. After Cincinnati Insurance itself failed to locate Huff, it hired a private investigative firm, Research Consultants Group, Inc., to locate her. See Cunningham Aff. ¶¶ 8, 9. That investigation included screening Loretta Huff's name through various Indiana databases, including credit records, social security number searches, driving records, employment records, vehicle registration records, and court records. See Hupfer Aff. ¶ 7; Hupfer Dep. 9. This search revealed only one person by the name of Loretta Huff, and she did not fit the age or physical description of the Loretta Huff involved in the accident. See Hupfer Aff. ¶ 8. The investigators then located fourteen Huff families in Lafayette, Indiana, and after researching each family, found only one Loretta Huff. See *id.* at ¶ 9. She, too, failed to match the description of the Loretta Huff involved in the accident. See *id.* Finally, although Research Consultants Group did not investigate the scene of the accident, it investigated the establishment where Huff was reportedly seen on the night of the accident. See Hupfer Aff. ¶ 10; Hupfer Dep. 20. No person at that establishment recalled or knew of a Loretta Huff. See Hupfer Aff. ¶ 10. Thus, these efforts failed to uncover any information about the true identity or location of Huff. See *id.* at ¶ 11.[1]

There was one other witness to the accident: Hope Worth. See McCarty Dep. 27. Since Worth's telephone number was unlisted, Cincinnati Insurance left contact cards and business cards at Worth's personal residence. See *id.* at 25. On April 22, 1998, Cincinnati Insurance contacted Worth's landlord, who responded that Worth had not lived at her reported address for three to four years and that he had no knowledge of her present residence. See *id.* at 25–26. On April 23, 1998, Cincinnati Insurance then contacted a location service, Rapid Track, to locate Worth. See *id.* at 26. Cincinnati Insurance has not yet been able to locate Worth. See *id.* at 27.

Several lawsuits have been filed in the wake of the accident. First, on January 18, 1995, Irvin and Hodge–Irvin brought suit in the Clinton Superior Court against Bailey, Brashear, and Huff for personal injuries. See Def.Ex. 7. Bailey filed a counterclaim against Irvin and a cross-claim against Huff for his own injuries. Bailey also brought a claim against Cincinnati Insurance for underinsured and uninsured motorist benefits.

---

1. Loretta Huff was originally referred to as "Jane Doe" in Irvin and Hodge–Irvin's personal injury action against her. Bailey later supplied Huff's name, although whether this name is accurate has not been established independently and remains in some doubt. See Cunningham Dep. 8; Bailey Dep. 10 (1995). Bailey also believed that Huff was from Lafayette, Indiana, but this is also subject to doubt. See *id.*

Cincinnati Insurance received prompt notice of the accident on or around November 28, 1994, and has provided coverage and defense to Bailey and Brashear in the Irvin action. See Cunningham Dep. 11; McCarty Dep. 13. Cincinnati Insurance obtained summary judgment in favor of Bailey (who was a passenger) on Irvin's and Hodge–Irvin's claims against him.

On November 12, 1996, Sentry Insurance brought a separate action in the Clinton Superior Court against Bailey, Brashear, Huff, and Cincinnati Insurance for damages and declaratory relief. See Pl.Ex. 5; Def. Ex. 8.[2] Sentry sought to recover the amount paid to its insured (Irvin) for property damage and medical expenses as a subrogee. Sentry requested and obtained service of process on Huff only by publication. See Pl.Ex. 10. Because Huff failed to appear, Sentry obtained a default judgment against Huff on June 17, 1997, in the amount of its subrogated interest. See Def.Ex. 9. The next day, however, Cincinnati Insurance moved to intervene and requested that the trial court set aside or stay enforcement of the default judgment against Huff based upon this pending federal declaratory judgment action. See Def.Ex. 10. On June 20, 1997, the Clinton Superior Court granted Cincinnati Insurance's motion, permitted Cincinnati Insurance to intervene, and stayed entry of the default judgment. See Def.Ex. 11.

Meanwhile, Cincinnati Insurance brought this declaratory judgment action in this court on March 6, 1997, to determine whether it owed Huff any duty to defend or indemnify her under the insurance policy it had issued to Patricia Brashear. The policy provides that Cincinnati Insurance will "pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident." Pl. Ex. 1 at 2 (emphasis in original). A "covered person" includes "[a]ny person using **your covered auto.**" *Id.* (emphasis in original). Accordingly, Cincinnati Insurance has a duty to defend and indemnify a person driving the covered vehicle with permission. See Cun-

ningham Dep. 6, 42–43. The policy also contains a cooperation clause. To be covered under this policy, the covered person "must ... [c]ooperate with us in the investigation, settlement or defense of any claim or suit." Pl.Ex. 1 at 10.

Based on Cincinnati Insurance's unsuccessful attempts to find Huff, this court granted leave to Cincinnati Insurance to obtain service by publication on Huff on June 18, 1997. See Pl.Ex. 11. Huff has never contacted Cincinnati Insurance or responded to any complaint against her. See Cunningham Aff. ¶ 5; Def.Ex. 9.

### Discussion

Because Huff had permission to drive Brashear's car, Huff is a "covered person" under the Cincinnati Insurance policy. Cincinnati Insurance's duties to defend her and to indemnify her are subject to conditions of the policy, including the standard cooperation clause, which requires a covered person to cooperate with the investigation and defense of claims. See, *e.g., Peters v. Saulinier,* 351 Mass. 609, 222 N.E.2d 871, 874 (1967) (permissive driver was subject to cooperation clause); *Lockwood v. Porter,* 98 N.C.App. 410, 390 S.E.2d 742, 743 (1990) (same); *Perry v. Saleda,* 34 Ill.App.3d 729, 340 N.E.2d 314, 320 (1975) (same). Cincinnati Insurance argues that the undisputed facts show that Huff breached her duty to cooperate under the policy.

Indiana law recognizes the validity of cooperation clauses in insurance policies. See *Wood v. Allstate Ins. Co.,* 21 F.3d 741, 745 (7th Cir.1994) ("Where insurance policies contain cooperation clauses, those provisions are valid and enforceable."). Under Indiana law, however, for an insurance company to be relieved of liability based on an insured's breach of its cooperation clause, the insurance company must prove the following elements in addition to the breach itself: (1) that the company used good faith efforts and diligence to obtain the insured's cooperation; (2) that the insured's breach of the cooperation clause was intentional and willful; and

---

**2.** According to Cincinnati Insurance's Motion to the Clinton Superior Court for Leave to Intervene and Motion for Stay of Proceedings or to

Reconsider, Sentry voluntarily dismissed Cincinnati Insurance from the action on December 10, 1996.

(3) that the insured's failure to cooperate prejudiced the company in its defense of the insured. *Smithers v. Mettert*, 513 N.E.2d 660, 662 (Ind.App.1987); *Newport v. MFA Ins. Co.*, 448 N.E.2d 1223, 1229 (Ind.App. 1983). Defendants concede that Cincinnati Insurance has used good faith efforts and diligence to obtain Huff's cooperation. They argue that Cincinnati Insurance has failed to prove that Huff willfully and intentionally breached the cooperation clause and has failed to prove that Huff's failure to cooperate has caused it any prejudice. The court considers each issue in turn.[3]

■ *Willful and Intentional Breach?* Under Indiana law, Cincinnati Insurance clearly bears the burden of proving that Huff's failure to cooperate was willful and intentional. See *Smithers*, 513 N.E.2d at 662 (insurer has the burden of proving the elements of intent, prejudice, and good faith efforts); see also *Miller v. Dilts*, 463 N.E.2d 257, 261 (Ind.1984) (insurer bears the burden of proving that it suffered actual prejudice before it can avoid liability); *Newport*, 448 N.E.2d at 1229 (insurer has the burden of proving that the insured willfully failed to cooperate and that it made good faith attempts to seek the insured's cooperation).

■ There is no evidence here that Huff even knows about the underlying lawsuits and claims, or that she knows Cincinnati Insurance covered the car she was driving, let alone that she has willfully and intentionally failed to cooperate with the insurer. Using the only fact available to it, however, Cincinnati Insurance argues that this court should find as a matter of law that Huff willfully and intentionally failed to cooperate. The available fact is that Huff fled the scene of the accident. The argument is that her flight constituted a willful expression of her desire to not cooperate with the insurance company. That is too long a stretch to make as a matter of law. There are numerous possible explanations for Huff's flight that have nothing to do with Huff's alleged desire to avoid cooperating with Cincinnati Insurance. Although flight from the scene of an accident is a violation of Indiana law, there is no suggestion that such a violation at the time of an accident is alone sufficient to nullify a driver's insurance coverage.

Moreover, Indiana courts have held that an insured's complete absence from trial is not sufficient to prove that the insured willfully and intentionally failed to cooperate when there is no evidence the insured was even aware of the trial. For instance, in *Smithers*, after several attempts by the insurance company to contact the insured, the insured responded and gave a statement over the telephone regarding the accident at issue. The insured later disappeared without leaving an address. When the injured party later sued the insured, despite the insurance company's attempts to contact him, the insured never responded and did not appear for trial. A default judgment was entered against the insured. The Indiana Court of Appeals held that the evidence failed to show the insured's failure to cooperate was intentional. Because the suit had not been filed until after the insured had disappeared, there was no evidence the insured was even aware of the suit or trial. In that situation, the court held the insured's failure to respond to contacts "does not indicate a refusal to cooperate," and the insurance company was required to show further that the insured had actually been contacted and then refused to respond. *Smithers*, 513 N.E.2d at 663.

The Indiana Court of Appeals reached a similar result in *Newport v. MFA Insurance Co., supra.* In that case, the insured driver killed a boy in an accident. The boy's family filed suit but could not find the driver to make service of process. The family then obtained service of process by publication and obtained a default judgment against the

---

3. Defendants have also argued that Cincinnati Insurance has waived or is estopped from asserting the lack of cooperation defense because it has not defended Huff in either tort action. The argument is without merit. An insurer, after making an independent determination that it has no duty to defend, must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hiring independent counsel and defending its insured under a reservation of rights. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind.App.1992). Cincinnati Insurance has preserved its right to assert this defense by filing this declaratory judgment action.

insured. When the family sought to collect from the insurance company, the company argued, among other defenses, that the insured had breached the cooperation clause. The trial court had ruled in favor of the insurance company, but the Court of Appeals reversed and directed entry of judgment in favor of the boy's family. The Court of Appeals found there was no evidence the insurance company had been diligent in securing the cooperation of the insured. In addition, and more to the point here, the Court of Appeals also held that the cooperation clause provided no defense because the evidence did not show that the insured driver "was even aware of the suit and intentionally failed to cooperate." 448 N.E.2d at 1229. Accord, *Continental Cas. Co. v. Burton*, 795 F.2d 1187, 1194 (4th Cir.1986) (applying Virginia law, where insured lawyer in possession of clients' funds disappeared without explanation before clients filed suit, insurer had no evidence that failure to cooperate in defense of clients' suit was willful; determination of willfulness could be based only on "speculation"); *Thrasher v. U.S. Liability Ins. Co.*, 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503, 509 (1967) (insurer failed to show that failure to cooperate was willful where insurer did not prove that permissive driver of insured's car even knew of the need to cooperate in defense); *Carpenter v. Superior Court*, 101 Ariz. 565, 422 P.2d 129, 134 (1966) (where insured's employee-driver disappeared after accident without explanation and without the insurer having ever contacted him, there was no evidence of lack of good faith on the driver's part, so insurer failed to show that disappearance was willful failure to cooperate).

In this case, as in *Smithers* and *Newport*, there is still no evidence that Huff is even aware of the claims and lawsuits. In the absence of evidence that Cincinnati Insurance made actual contact with her and asked for her help, and that Huff refused to cooperate, Cincinnati Insurance cannot show a willful and intentional failure to cooperate under *Smithers* and *Newport*. Cincinnati Insurance argues, however, that these cases can be distinguished from this one on the basis that Huff was not the "named" insured on the policy. Cincinnati Insurance argues that

where the non-cooperating party is the named insured, the insurance company will have access to more information that would give it a fighting chance to contact the insured, including her name, address, and employer, while it has no such reliable information regarding Huff. The Indiana courts have not addressed this specific problem before, but the distinction argued by Cincinnati Insurance finds no support in the Indiana cases and their reasoning. The lack of reliable identifying information about Huff certainly makes it more difficult for Cincinnati Insurance to find her. Nevertheless, the court fails to see how Cincinnati Insurance's lack of information concerning Huff shows that *Huff's* conduct was willful and intentional. That is the issue under Indiana law, and Indiana law provides no basis for relaxing the burden on the insurer depending on whether the insured is the named insured or a permissive driver. Moreover, in similar cases where permissive drivers disappeared without explanation and thus failed to cooperate with the insurers, the New York court in *Thrasher* and the Arizona court in *Carpenter* also applied the same standard of willful and intentional failure to cooperate and held that the insurers had failed to show the permissive drivers had willfully and intentionally failed to cooperate. See *Thrasher*, 278 N.Y.S.2d 793, 225 N.E.2d at 509 (permissive driver "cannot be accused of willful obstruction unless he knew that the defendant wanted him to testify at the trial"); *Carpenter*, 422 P.2d at 134 (no evidence showed that permissive driver even knew of existence of insurance policy, much less of any duty to cooperate with the insurer). Cincinnati Insurance has not identified cases from other jurisdictions adopting its proposed distinction between named insureds and permissive drivers.

■ Indiana law makes it plain that where the insurance company fails to make direct contact with the insured, the fact that the insured cannot be found to help the defense is not sufficient to prove the essential element of a willful and intentional failure to cooperate. In such cases, the risks and consequences of the insured's absence fall on the insurance company, regardless of the prac-

tical difficulties it may face. See *Smithers*, 513 N.E.2d at 663; *Newport*, 448 N.E.2d at 1229. The same principles apply where the insured is a permissive driver of a covered vehicle rather than the named insured. Cincinnati Insurance is not entitled to summary judgment because it has not shown as a matter of law that Huff has willfully and intentionally breached the cooperation clause.

■ *Prejudice to the Insurer?* Indiana law also requires Cincinnati Insurance to demonstrate that the insured's breach of the cooperation clause has caused it material prejudice. *Miller*, 463 N.E.2d at 261 (holding that "an insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy"), relying on *Motorists Mut. Ins. Co. v. Johnson*, 139 Ind.App. 622, 218 N.E.2d 712, 715 (1966) ("A technical or inconsequential lack of cooperation has often been held insufficient to void the policy and the lack of cooperation to be sufficient must be in some substantial and material respect. Non-cooperation must be material. Prejudice must be shown by insurer."); *Smithers*, 513 N.E.2d at 662; accord, *Wood*, 21 F.3d at 745 ("an insurance company is able to invoke such a clause to avoid liability only where it is materially prejudiced by the insured's failure to cooperate"); *State Farm Mut. Auto. Ins. Co. v. Walker*, 382 F.2d 548, 551 (7th Cir.1967) ("under Indiana law, the insurer is required to establish prejudice resulting from the insured's breach of the cooperation clause in order to be relieved of its contractual obligations").[4]

■ Cincinnati Insurance again relies on Huff's flight from the scene of the accident to prove that it has been materially prejudiced as a matter of law. Cincinnati Insurance argues that it has been prejudiced by Huff's immediate disappearance because it could not obtain Huff's description of the accident and must therefore defend an "empty chair" when liability is contested. Also, it seems likely that Huff's flight from the scene of the accident will not help the defense on issues of liability.

Indiana case law provides limited guidance in determining what constitutes material prejudice in this situation. In *Motorists Mutual v. Johnson*, the insured first lied to his insurance company by reporting that the driver of his vehicle involved in the collision did not have permission to drive, and then testified at trial that the driver did have permission. 218 N.E.2d at 714–15. The Indiana Court of Appeals found that where "the insured intentionally furnishes false information of a material nature either before or at the trial," the insurance company is prejudiced. *Id.* at 716. (The court went on to hold, however, that the insurance company was obligated to indemnify the driver of the vehicle. *Id.* at 717–18.) On the other hand, where the insured had affirmatively deceived his insurance company in an initial statement but gave a truthful statement before trial, the Seventh Circuit applying Indiana law held that summary judgment for an insurance company was inappropriate. In *State Farm Mutual v. Walker*, 382 F.2d at 550, five days after the accident the insured gave a statement to his insurance company saying that the accident was caused by his attempt to avoid an oncoming car in his lane. More than a year later, however, he admitted in a deposition that he had lied to the insurance company and that he had lost control of his car when he attempted to pass the car in front of him. Even though the insured had

---

4. An earlier decision of the Seventh Circuit applying Indiana law, *Potomac Ins. Co. v. Stanley*, 281 F.2d 775 (7th Cir.1960), both rejected a requirement of actual prejudice (see page 780), and concluded that the insured's absence from the trial in a case brought by a third party should be presumed prejudicial (see page 781). The Seventh Circuit explained in *Stanley*, however, that it had found no guidance from the Indiana courts because they had not yet addressed the effect of an insured's failure to cooperate. The later decision by the Supreme Court of Indiana in *Miller v. Dilts* shows clearly that the actual prejudice requirement is an element of a defense based on failure to cooperate. That holding has superseded the contrary language in *Stanley*. In addition, the Seventh Circuit in *State Farm Mutual v. Walker* applied Indiana law and concluded both that the insurer must prove prejudice, which meant that the insurer would have to prove the breach would "produce a judgment less favorable to it in the tort suit," and that prejudice could not be decided until after trial. See 382 F.2d at 551. That reasoning also effectively superseded *Stanley*'s presumption that the insured's absence would be prejudicial.

intentionally deceived his insurance company, the Seventh Circuit concluded that genuine issues of fact existed as to whether the insured's failure to cooperate prejudiced the insurance company. See 382 F.2d at 551–52 (new version of accident was "not a bolt from the blue;" insurer had had ample time to investigate that version, to negotiate a settlement, and/or to prepare for trial that had not yet occurred). The court strongly implied that in such cases, the issue of prejudice could not be resolved in favor of an insurer until after the underlying tort action had been decided. *Id.* at 551 (before trial in tort action, determination of prejudice would be "speculative," and this "inherent uncertainty has prompted courts to postpone or deny declaratory relief when the underlying tort action is pending").

An insurer facing the defense of a claim with an absent defendant might reasonably ask how it is supposed to prove that it could have had a better result in a trial if it had been able to locate a key witness whom it never manages to locate. As discussed below, decisions from other jurisdictions offer additional guidance as to when a failure to cooperate might cause prejudice, but they do not necessarily offer much solace to an insurer that never locates the insured and is never able to offer proof of the testimony the insured could have offered if she had appeared for trial. In addition, it is important to keep in mind, as most state courts have when dealing with similar problems, that the automobile liability insurance policy is not a purely private contract. Such insurance is required by law to protect the interests of innocent third parties injured by the negligence of the insured person. Thus, in the absence of collusion, most courts put the burden of proof, and thus the risk of uncertainty, on the insurer rather than on the person injured by the insured's negligence. See, *e.g., M.F.A. Mut. Ins. Co. v. Cheek,* 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809, 813 (1977) ("Mindful of the fact that the public is the beneficiary of the automobile policy" and that "the prime objective of the cooperation clause is to prevent collusion," a court requires proof of prejudice resulting from failure to cooperate); *Farley v. Farmers Ins. Exchange,* 91 Idaho 37, 415 P.2d 680, 684 (1966) (in view of purposes of liability insurance, requiring proof that failure to cooperate caused prejudice); *Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155, 157 (1963) (rejecting presumption of prejudice where insured fails to cooperate); see also *Maryland Cas. Co. v. Hallatt,* 295 F.2d 64, 72–73 (5th Cir.1961) (Rives, J., dissenting) (courts should require proof of prejudice; "[a]utomobile liability insurance supplies a highly important social need. Without it few of the drivers on our highways could respond in damages to the victims of their negligence. *** That social need should be kept in mind by the courts, especially in a case like this, where the liability insurer admits coverage on the date of the injury but claims a defense arising more than three years thereafter because of conduct of its insured, in which the injured persons had no part."), *overruled in later appeal, and views of dissent adopted,* 326 F.2d 275 (5th Cir.1964).

■ Cases in which the insured actively colludes with and supports the claim of an injured plaintiff present relatively few difficulties, of course, and the most basic purpose of a cooperation clause in a liability insurance policy is to prevent collusion. See, *e.g., Elliott v. Metropolitan Cas. Ins. Co.,* 250 F.2d 680, 684 (10th Cir.1957) (applying Kansas law, collusion will be deemed prejudicial, while insured's failure to appear for trial must be shown to be prejudicial; because contrary rule "would offer temptation to the insurer to spirit [the insured] beyond the jurisdiction of the court, these cases have sought to prevent such a result by placing the burden upon the insurer to show that its case was adversely affected by his disappearance"); *M.F.A. Mutual Ins. Co. v. Cheek,* 66 Ill.2d 492, 6 Ill.Dec. 862, 363 N.E.2d 809, 813 (1977) (prime objective of cooperation clause is to prevent collusion between the insured and injured, as well as to enable the insurer to prepare its defense; insurer must prove substantial prejudice, which requires it to demonstrate "that it was actually hampered in its defense by the violation of the cooperation clause"); see also *Wood,* 21 F.3d at 745 ("The concern is that the plaintiff and the insured might collude, to the detriment of the

insurance company."), citing Note, Conduct of the Insured Under Cooperation Clauses in Policies of Liability Insurance, 22 Notre Dame L. 118 (1946).

Where the alleged failure to cooperate is the insured's absence from trial, however, the better reasoned view is that the absence ordinarily cannot be deemed prejudicial as a matter of law:

> Although some states hold that absence from trial, in and of itself, is sufficient to substantiate a claim of noncooperation, the majority and better rule appears to be that when the driver of an automobile breaches his insurance contract by failing to appear, the insurer is not prejudiced as a matter of law, by that naked fact alone, and that no presumption to the contrary arises to aid the insurer.

*Brooks v. Haggard,* 481 P.2d 131, 134 (Colo. App.1970), citing *Farley v. Farmers Ins. Exchange,* 91 Idaho 37, 415 P.2d 680 (1966), and *Thrasher v. U.S. Liability Ins. Co.,* 19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967). To the same effect, see also *Maryland Cas. Co. v. Hallatt,* 326 F.2d 275, 277 (5th Cir.1964) (applying Florida law, failure of insured to attend trial was not, as a matter of law, prejudicial); *Iowa Home Mut. Cas. Co. v. Fulkerson,* 255 F.2d 242, 245 (10th Cir.1958) (applying Wyoming law, no prejudice shown where missing insured's prior statement describing accident showed benefits of his testimony were "at the very most, doubtful"); *Phillips v. Glens Falls Ins. Co.,* 288 F.Supp. 151, 155 (S.D.W.Va.1968) (predicting West Virginia courts would follow majority rule and require proof of prejudice where insured fails to appear for trial), *aff'd,* 409 F.2d 206 (4th Cir.1969); *Billington v. Interinsurance Exchange of Southern California,* 71 Cal.2d 728, 79 Cal.Rptr. 326, 456 P.2d 982, 987 (1969) (where insured failed to appear for deposition, leading to default judgment, issue was whether "if the cooperation clause had not been breached there was a substantial likelihood the trier of fact would have found in the insured's favor," which could not be decided as a matter of law where some evidence tended to support a defense of assumption of risk); *Allen v. Cheatum,* 351 Mich. 585, 88 N.W.2d 306, 311–

12 (1958) (requiring proof of actual prejudice from insured's failure to appear for trial: "Any other rule might tempt some insurance companies (present company of course excepted) to be less concerned with defending or settling their claims than with subtly encouraging certain of their less desirable risks to "get lost" and stay lost while at the same time building a plausible if perfunctory record for an ultimate claim of noncooperation."); *Harleysville Ins. Co. v. Rosenbaum,* 30 Md.App. 74, 351 A.2d 197, 203 (1976) (where insured did not cooperate and died before trial without giving statement, whether cooperation would have provided substantial likelihood of a different result would have to be decided after trial of the underlying tort action); *Panhans v. Associated Indemnity Corp.,* 8 Cal.App.2d 532, 47 P.2d 791, 795 (1935) (insured's absence from trial was not prejudicial, at least as a matter of law; insured had given prior statement tending to show liability); see generally *Romualdo P. Eclavea, Annotation, Liability Insurance: Failure or Refusal of Insured to Attend Trial or to Testify as Breach of Co-operation Clause,* 9 A.L.R.4th 218 (1981).

Several of these cases illustrate the difficulty in determining whether, as a matter of law, the absence of the insured caused prejudice, especially before the trial in the underlying tort action. In *Farley* the insured had cooperated with his insurer before trial, but he failed to appear for trial, and judgment was rendered against him. When the issue was whether his absence had prejudiced the insurer, the same trial judge who presided over the original trial found that the outcome would have been no different if the insured had appeared. The Idaho Supreme Court affirmed. 415 P.2d at 683–84. Similarly, in *Phillips v. Glens Falls Ins. Co.,* 288 F.Supp. 151 (S.D.W.Va.1968), the insured failed to appear for trial despite numerous requests for his assistance. After carefully reviewing the transcript of the underlying trial and the unsavory facts that would have been developed if the insured had testified, the district court found the insurer was not prejudiced by the insured's absence: "Indeed, it would appear that his presence at the trial might have influenced the jury to return more substantial verdicts against [the insured]." 288

F.Supp. at 154. In *Brooks,* the insured had failed to appear for trial. Shortly before trial he had indicated he no longer recalled the circumstances of the accident, and that fact tended to show the insurer was not prejudiced. The appellate court held, however, that because he had given a prior statement that might have been used to refresh his recollection if he had testified at trial, and because that statement tended to support the defense, the question of prejudice was for the jury to decide. 481 P.2d at 134.

The view that prejudice from the insured's failure to appear for trial ordinarily cannot be determined as a matter of law is the majority view, but it is not universal. See, *e.g., Cameron v. Berger,* 336 Pa. 229, 7 A.2d 293, 295 (1938) (insured's voluntary disappearance before trial held prejudicial where she was only witness for defense); *Glens Falls Indemnity Co. v. Keliher,* 187 A. 473, 476–77 (1936) (insured's voluntary disappearance from trial nullified coverage; hopeless prejudice to defense is obvious to "[e]very person familiar with the trial of cases by jury," and prejudice need not be shown in any event). Also, of course, the views expressed by the Seventh Circuit in *Stanley* reflect what is by now clearly the minority view. See 281 F.2d at 780–81 (stating that "great weight of American authority" rejects requirement that prejudice be proved, and failure of insured to appear for trial "is *per se,* prejudicial"). For a recent review of the subject, see *Darcy v. Hartford Ins. Co.,* 407 Mass. 481, 554 N.E.2d 28, 33–34 & n. 6 (1990), in which the highest court in Massachusetts overruled its prior doctrine and adopted the majority view that prejudice must be shown even where the insured provides no cooperation to the insurer.

In this court's view, the majority view that the insurer must prove at least a reasonable probability of actual prejudice caused by the insured's failure to appear is in harmony with the more general Indiana holdings that the insurer must prove prejudice, and that prejudice requires proof that the insured's failure

to cooperate actually produced a judgment less favorable in the underlying tort action. See *State Farm Mutual v. Walker,* 382 F.2d at 551; *Wood,* 21 F.3d at 745; *Miller,* 463 N.E.2d at 261; *Smithers,* 513 N.E.2d at 662; *Motorists Mutual v. Johnson,* 218 N.E.2d at 715. In this case, where Huff has not misled or deceived the insurance company, but has simply disappeared without explanation, Cincinnati Insurance is not entitled to summary judgment on the issue of prejudice. Moreover, the question of prejudice appears impossible to decide before a trial is held in the underlying tort action. The Seventh Circuit explained in *Walker* that "an insurer is not prejudiced unless the breach will produce a judgment less favorable to it in the tort suit." *Id.* at 551. Because the state tort suits in this case have not yet been decided, the court cannot find as a matter of law that Cincinnati Insurance has been materially prejudiced by Huff's conduct. See also, *e.g., Phillips v. Glens Falls Ins. Co.,* 288 F.Supp. at 154 (deciding question of prejudice from insured's absence by examining trial transcript in underlying tort action); *Harleysville Ins. Co. v. Rosenbaum,* 351 A.2d at 203 (trial court's finding of no prejudice was premature before trial of underlying tort action, and trial court should reconsider issue after trial in tort action).

Finally, in its reply brief, Cincinnati Insurance asked that the court, in the event it denies the motion for summary judgment, either state "that its ruling would be the same if a trial was had in the underlying state tort claim and Huff's disappearance continued, or that this eventuality is specifically *not* ruled upon." In deciding Cincinnati Insurance's pending motion, the court is not stating what its decision will be in the future on a record not yet presented. The court believes, however, that this entry correctly sets forth and applies the law to the facts presented today. This entry may therefore provide some guidance to these parties in the future.[5]

---

5. At the end of the oral argument on Cincinnati Insurance's motion for summary judgment, defendants moved orally for summary judgment in their favor. The court denied their motion orally because it is still at least remotely possible that

Huff could appear before trial in the underlying litigation and could refuse to cooperate in the defense, and because the court does not see how prejudice can be determined as a matter of law in this case before trial in the underlying lawsuit.

*Conclusion*

For the reasons explained above, plaintiff's motion for summary judgment is hereby DE-NIED. The trial set for September 14, 1998, is hereby VACATED. The court hereby ORDERS plaintiff Cincinnati Insurance to file a report to the court **no later than December 31, 1998,** concerning the status of the litigation in state court.

So ordered.