Roger SMITHERS, Plaintiff-Appellant,

v.

James C. METTERT,
Defendant-Appellee,

Milwaukee Insurance Company,
Garnishee-Defendant-Appellee.

No. 33A01–8703–CV–00060.

Court of Appeals of Indiana,
First District.

Sept. 30, 1987.

Rehearing Denied Nov. 12, 1987.

R. Scott Hayes, Gregory L. Crider, Scotten & Hinshaw, New Castle, for plaintiff-appellant.

Peter G. Tamulonis, John T. Lorenz, John B. Drummy, Kightlinger & Gray, Indianapolis, for defendant-appellee.

RATLIFF, Chief Judge.

STATEMENT OF THE CASE

Roger Smithers appeals from the Henry Circuit Court the denial of his motion for payment of insurance proceeds through proceedings supplemental. We reverse.

FACTS

On April 25, 1979, a car owned and operated by James C. Mettert (Mettert) swerved off the road and flipped over. Three passengers were in the car with Mettert: Mary Daffron, Jack Duffy, and Roger Smithers (Smithers). Smithers was injured. Mettert was insured by Milwaukee Insurance Company (Milwaukee) under an automobile liability insurance contract that contained standard conditions for coverage.

After obtaining treatment for his injuries, Smithers contacted an attorney, who in turn contacted Milwaukee and asserted Smithers's claim. Milwaukee retained the services of Thomas Forshee (Forshee), an independent adjuster, to investigate Smithers's claim. In investigating the claim, Forshee sent two (2) letters to Mettert's Indiana address, one (1) in January, and one (1) in February of 1980. Apparently, Mettert was out of state at the time. Finally, in March of 1980 Mettert responded and telephoned Forshee from New Castle, Indiana, and gave a statement concerning the accident. Forshee then attempted, but failed, to contact the other passengers. Forshee did not obtain a police report. Finally, on January 26, 1981, Forshee wrote to Milwaukee and stated that Mettert was apparently in California and that Forshee was unable to locate the other passengers.

On February 5, 1981, Smithers filed a complaint for damages against Mettert based on the 1979 accident. Milwaukee retained David S. Wallace (Wallace) who filed an appearance and answer on behalf of Mettert on May 7, 1981. After filing the appearance Wallace attempted to contact Mettert. Wallace sent a letter to Mettert in care of Pat Ballard which indicated he entered an appearance in the suit and requested that Mettert contact him. Wallace did not receive a response. Accordingly, on May 11, 1981, Wallace sent a second letter by certified mail, return receipt requested. The letter was accepted and signed by Ella Foat on May 16, 1981. However, Wallace did not receive a response from Mettert.

Wallace continued his attempts to contact Mettert by calling Mettert's mother who resided in New Castle, Indiana. Wallace requested that she have Mettert contact him. On September 11, 1981, Wallace requested investigative assistance from Milwaukee. Milwaukee retained Kane-Weber, an investigative agency, to locate Mettert. On November 11, 1981, Wallace received Kane-Weber's report which indicated that Mettert was temporarily staying at the residence of his brother and sister-in-law in Largo, Florida. The report contained an address and telephone number where Mettert could be contacted.

Wallace attempted to contact Mettert at the Largo address by sending a letter by certified mail, return receipt requested. The letter was returned unclaimed. Wallace also attempted to telephone Mettert, but the telephone rang without answer. Wallace sent a second certified letter to the Largo address on November 10, 1982. On the same day duplicate letters were sent to a Clearwater, Florida, address and to Mettert's mother in New Castle. On November 29, 1982, Wallace filed a verified petition to withdraw his appearance on behalf of Mettert due to his inability to contact Mettert. The court granted the petition.

On January 4, 1983, the trial court entered a default judgment in favor of Smithers and against Mettert who failed to appear for trial. A hearing on damages was held on January 11, 1983. Mettert again failed to appear. Judgment was entered in favor of Smithers for Seventy-Five Thousand Dollars ($75,000).

On January 26, 1983, Smithers filed a motion to enforce judgment by proceedings supplemental and filed interrogatories to be answered by Milwaukee. The court ordered Milwaukee to appear and answer. On March 1, 1983, Milwaukee entered its appearance and filed answers to the interrogatories. On June 2, 1983, Smithers filed a garnishment motion for a court order directing payment of insurance proceeds. On October 3, 1983, Milwaukee filed an answer to the garnishment motion. On October 21, 1983, a hearing was held, and the trial court took the motion under advisement. Post hearing briefs were filed. On April 9, 1986, Smithers filed a renewed

garnishment motion. Finally, on November 26, 1986, more than three (3) years after the garnishment hearing, the trial court entered an order denying Smithers's motions for payment of insurance proceeds. The trial court also issued a memorandum decision in support of the order. Smithers appeals the denial.

## ISSUES

The following rephrased issues were raised:

Whether the trial court's denial of Smithers's garnishment motion for payment of insurance proceeds is supported by:

(1) a breach of the insurance contract's cooperation clause; or

(2) a breach of the insurance contract's notice clause; or

(3) a failure to fulfill the insurance contract's condition that judgment be obtained after "actual trial".

## DISCUSSION AND DECISION

Smithers challenges the trial court's general order denying Smithers's garnishment motion for payment of insurance proceeds. As a general judgment, the order may not be overturned unless the evidence in the record fails to support any theory justifying the denial of the payment of the insurance proceeds. *Garlinger v. Garlinger* (1986), Ind.App., 501 N.E.2d 1138, 1139; *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301, 1304. Although the trial court also issued a memorandum decision with the order, the memorandum does not constitute special findings of fact and conclusions of law. *Sadler v. Sadler* (1981), Ind.App., 428 N.E.2d 1305, 1307; *Malo v. Gilman* (1978), 177 Ind.App. 365, 367, 379 N.E.2d 554, 556. We may examine the memorandum, however, to determine the meaning and effect of the order. *Sadler*, at 1307.

*Issue One: Cooperation Clause.*

■ The first theory raised by Milwaukee which may have supported the denial of the insurance proceeds involves the insurance contract's condition of cooperation.

Condition number five (5) of the insurance contract provides, in pertinent part:

"5. Assistance and Cooperation of the Insured—Parts I and III. The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or loss with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical relief to others as shall be imperative at the time of accident."

Record at 58A. Although this clause could prevent Smithers from recovering from Milwaukee, Milwaukee has the burden of proving three things. First, Milwaukee must establish that Mettert breached the clause by intentionally and wilfully failing to cooperate and attend trial. 8 Appleman, Insurance Law and Practice § 4784 (1981); *Newport v. MFA Insurance Co.* (1983), Ind.App., 448 N.E.2d 1223, 1227. Second, Milwaukee must establish its good faith efforts and diligence in obtaining Mettert's cooperation. *Newport*, at 1227; *Mutual Automobile Insurance Co. v. Walker* (7th Cir.1967), 382 F.2d 548, 551; *Potomac Insurance Co. v. Stanley* (7th Cir.1950), 281 F.2d 775, 781. Third, Milwaukee must establish that Mettert's failure to cooperate or attend trial prejudiced Milwaukee in its defense of Mettert. *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257, 261; *Motorists Mutual Insurance Co. v. Johnson* (1966), 139 Ind.App. 622, 628, 218 N.E.2d 712, 715.

■ In the present case the cooperation clause does not support the court's order denying payment. Although the evidence may be sufficient to support Milwaukee's efforts to obtain Mettert's cooperation, and

prejudice to Milwaukee,[1] the evidence in the record fails to establish that Mettert intentionally and wilfully failed to cooperate and attend trial. Rather, the evidence indicates that when Mettert actually received notification he was cooperative. Mettert responded to Forshee's first two letters, apparently after he returned to Indiana and received the letters. Mettert further cooperated by giving a detailed statement to Forshee during the telephone conference. Although Forshee and Wallace subsequently were unable to locate Mettert, this alone does not indicate an intentional and wilfull refusal to cooperate on Mettert's part. Rather the evidence indicates only Milwaukee's efforts to locate Mettert, and does not establish Mettert's refusal to cooperate. Mettert's absence from trial also does not establish an intentional and wilfull failure to cooperate. Although Mettert knew Smithers intended to file a claim for injuries against Mettert's insurance, a suit was not filed until after Mettert disappeared. Absence of a response alone does not indicate a refusal to cooperate. Milwaukee must also establish that Mettert refused to respond after he was contacted by Milwaukee. This Milwaukee failed to do. Therefore, the cooperation clause does not support the court's order.

*Issue Two: Notice Clause.*

◾ The insurance contract between Mettert and Milwaukee also conditioned liability on notice. Condition number three (3) provides, in pertinent part:

> "3. Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any

of its authorized agents within 20 days following the date of the accident, occurrence or loss; provided, that failure to give such notice within the time specified shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that such notice was given as soon as reasonably possible. In the event of theft, the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Record at 58A. Although Mettert was required to give prompt notice of an accident and lawsuit, Milwaukee waived this defense when they failed to raise it in their answer or at the hearing on Smithers's garnishment motion. Failure to raise an affirmative defense in a responsive pleading waives the issue. *American Underwriters, Inc. v. Curtis* (1981), Ind., 427 N.E.2d 438, 443. Therefore, the notice clause does not support the trial court's order.

*Issue Three: No Action—Actual Trial Clause.*

◾ The final theory which Milwaukee raised to support the trial court's order involves the insurance policy's "no-action" clause. Condition number six (6) of the policy provides, in pertinent part:

> "6. Action Against Company—Part 1. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agree-

---

1. We note that although Milwaukee attempted to contact Mettert through letters and phone calls, the attempts were unsuccessful. Milwaukee made no attempts to subpoena or depose Mettert. Furthermore, no effort was made to contact Mettert in person. Therefore, Milwaukee may have failed to sufficiently establish good faith efforts and diligence in obtaining Mettert's cooperation. *See e.g., Lappo v. Thompson* (1980), 87 Ill.App.3d 253, 42 Ill.Dec. 531, 409 N.E.2d 26.

ment of the insured, the claimant and the company."

Record at 58A. This condition was raised as a defense in Milwaukee's answer to Smithers's garnishment motion for payment of insurance proceeds. However, an insurer's refusal to defend an insured against suit bars the subsequent invocation of a "no-action" clause as a defense. *Miller,* at 261–62; *Kelso v. Kelso* (1957), Mo., 306 S.W.2d 534, 540; *Pioneer Casualty Co. v. Jefferson* (1970), Tex.Civ.App., 456 S.W.2d 410, 413; *Gulf Insurance Co. v. Vela* (1962), Tex.Civ.App., 361 S.W.2d 904, 908. Milwaukee had a duty to defend the suit. Although the "no-action" clause may have been a condition precedent to this duty, Milwaukee will not be allowed to argue that the default judgment did not constitute a "judgment after actual trial", especially when Milwaukee had notice of the suit and could have taken measures to contest the suit. Therefore, since Milwaukee had notice, and could have contested, we refuse to allow Milwaukee to rely on the "no-action" clause to support the order of denial.

The "no-action" clause would be insufficient to support the trial court's order even if it was not waived by Milwaukee's actions. The clause provides:

"No action shall lie against the company, ..., until the amount of insured's obligation to pay shall have been fully determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Record at 58A. In interpreting this clause the terms should be construed liberally to provide coverage when an ambiguity exists. *Redar v. Allstate Insurance Co.* (1985), Ind.App., 497 N.E.2d 566, 567. However, unless reasonable minds would differ as to the meaning, the terms should be interpreted based upon their plain and ordinary meaning. *Id.* at 568.

In the present case, the terms of the "no-action" clause are ambiguous. One could interpret "actual trial" to mean and require a contested and adversary trial. However, one could also interpret these terms to require that the amount of obligation be determined by the court when the litigants and insurance company cannot reach an agreement. Thus, when a settlement is not reached the trial court must decide the amount of obligation before the insurance company is liable. This later interpretation appears to be the correct one as the main purpose of the "no-action" clause is to protect the insurance company's interests from the collusive efforts of the injured and insured. Therefore, we find that the clause is ambiguous and adopt the second interpretation.[2]

The default judgment rendered in the present case clearly falls within our interpretation of the "no-action" clause. Smithers, Milwaukee, and Mettert, who was absent, could not agree as to the amount of obligation under the policy. Accordingly, Smithers filed suit against Mettert. Milwaukee was aware of the accident and the lawsuit. In fact, Milwaukee appeared and answered Smithers's complaint on behalf of Mettert. Subsequently, Milwaukee refused to defend Mettert and withdrew the appearance. The trial court entered a default judgment against Mettert after he failed to attend trial. Subsequently, a hearing on damages was held and evidence was presented to the court. Neither Mettert nor Milwaukee contested the issues at either hearing. The final judgment, however, was not entered by the court as part of a private settlement agreement between only the injured and insured. Under these circumstances, we hold that an "actual trial" occurred within the provisions of the no-action clause.

We reject Milwaukee's argument that the trial must be contested and adversary to be an "actual trial". A trial does not have to be contested or adversary to be an

2. We note that under this interpretation the clause also should be interpreted not to include trial determinations which merely rubber stamp compromise agreements entered into by the litigants and not by the insurance company. *See*

*e.g., Wright v. Allstate Insurance Co.* (1955), Tex. Civ.App., 285 S.W.2d 376. A judgment under these circumstances would not protect the insurer against collusion.

"actual trial". *Pioneer Casualty*, at 413; *Gulf Insurance*, at 908. In both *Pioneer Casualty* and *Gulf Insurance*, the courts held that a default judgment was an "actual trial" within the meaning of the no-action clause. *Pioneer Casualty*, at 413; *Gulf Insurance*, at 908. In both cases, the insurers knew of the accident and lawsuit; the insureds failed to attend trial; and default judgments were entered after evidence of damages was presented to the courts. *Pioneer Casualty*, at 413; *Gulf Insurance*, at 908. Similarly, Milwaukee knew of the accident and lawsuit; Mettert failed to attend trial; and a default judgment was entered after evidence of damages was presented to the court. Accordingly, we hold that an "actual trial" occurred and Milwaukee's suggested interpretation is rejected. To adopt Milwaukee's interpretation in this case would allow the insurer to escape liability by agreed default. Such a result would subvert the public policy of this state which seeks to protect and compensate victims of tortious injury. Therefore, the trial court's order denying payment of the insurance proceeds is reversed and we remand with instructions to the trial court to order payment of the insurance proceeds.

Reversed and remanded with instructions.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I dissent. Reversal of the judgment carries with it a determination by the majority that, as a matter of law, Mettert did not willfully and intentionally fail to cooperate. The majority necessarily holds that the trial court could not reasonably infer such failure to cooperate. I disagree. After initial contact was made and Mettert gave his telephonic statement, Mettert told Milwaukee's adjuster during a telephone conversation initiated by the adjuster that he, Mettert, did not have time to discuss the accident because he was going to California. Despite efforts to learn his whereabouts from relatives, Milwaukee was unable to do so. Mettert failed to keep Milwaukee advised as to his whereabouts.

The record also contains abundant evidence that Milwaukee used good faith and diligence in an effort to obtain Mettert's cooperation.

For these reasons I would affirm the judgment and find no reason to address the other issues discussed by the majority opinion.