Dirk A. MORRIS and Lisa K. Bowman–Morris, Appellants–Plaintiffs,

v.

ECONOMY FIRE AND CASUALTY COMPANY, St. Paul Fire and Marine Insurance Company and Metropolitan Property and Casualty Insurance Company, Appellees–Defendants.

No. 49A02–0402–CV–129.

Court of Appeals of Indiana.

Sept. 20, 2004.

---

Morris L. Klapper, G.R. Parish, Jr., Klapper Isaac & Parish, Indianapolis, IN, Attorneys for Appellants.

Alan A. Bouwkamp, Newton Becker, Reichert, Indianapolis, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Dirk A. Morris (Dirk) and Lisa K. Bowman–Morris (Lisa), (collectively, "the Morrises"), appeal the trial court's order granting summary judgment in favor of Appellees–Defendants, Economy Fire and Casualty Company, St. Paul Fire and Marine Insurance Company, and Metropolitan Property and Casualty Insurance Company (collectively, "Economy").

We reverse and remand.

### ISSUE

The Morrises raise two issues on appeal, which we consolidate and restate as follows: whether the trial court erred in granting summary judgment in favor of Economy.

### FACTS AND PROCEDURAL HISTORY

On May 30, 2000, the owner of a mini-storage facility in Cloverdale, Indiana, contacted the Morrises to inform them that the storage unit that they rented from the facility had been broken into. Several items were taken from the Morrises' storage unit, including a number of personal property items. Dirk went to the site of the mini-storage facility and met with an Indiana State Police Officer. At that time, Dirk estimated the loss to be approximately $15,000.00, as the used or garage sale value of the property that was stolen.

On or around June 10, 2000, the Morrises reported their loss to the Morrises' insurer, Economy. Economy obtained a copy of the Indiana State Police report, which stated that the dollar value of property stolen from the rental unit was approximately $15,000.00. On June 12, 2000, Economy's claims adjuster took the recorded statement of Dirk. During this statement, Dirk listed various items stolen from the storage unit, including a computer, Lisa's clothes, perfumes, a wine collection, and rugs. Additionally, Dirk alleged that there were a variety of Snap–On, Craftsman and Maco tools valued at approximately $7,000.00, taken from the storage unit. Economy continued to investigate the Morrises' claim, and through its initial investigation determined the following, in pertinent part:

a. A large number of the personal property items[,] which were purportedly stolen[,] were very expensive tools.

b. The values of the property had gone from the $15,000.00 listed on the police record to $38,000.00 when the inventory was submitted by the Morrises.

c. [Dirk] represented to Economy that he was physically disabled.

d. Despite the fact that they were professional grade tools, [Dirk] claimed they were not used for [a] business purpose.

e. Dirk [ ] had not provided any receipts or documentation regarding purchases for obtaining these tools.

f. The Morris' home was for sale, although the reason for the sale was unknown.

(Appellant's App. pp. 141–42, 147, 215, 218, 252).

On October 9, 2000, the Morrises advised Dan Jackson (Jackson), a representative of Economy, that they sought counsel and that they would not communicate with Economy until after they spoke with their attorney. Nonetheless, Economy proceeded with its investigation, and subsequently determined that additional issues and questions needed to be addressed in order to make a determination regarding the Morrises' claim. Particularly, the record reflects that Economy requested, among other things, the Morrises': (1) federal and state income tax returns; (2) documentation of all income for all household residents' statements for accounts at any financial institution; (3) documentation of debts or obligations of household residents; (4) copies of all financial statements or loan applications provided by any household members; (5) all estimates, appraisals, receipts or canceled checks reflecting the cost of repairing or replacing the personal property which was claimed stolen; and (6) documentation of all materials used to prepare the Proof of Loss submitted. Additionally, Economy determined that it needed to examine the Morrises, separately, to aid their investigation.

Thus, Economy requested, through its attorney, the examinations under oath of the Morrises in accordance with the policy's express provisions and asked them to provide specific documents, including financial records. Economy claimed that the purpose of this investigation was to:

a. Determine whether the tools were used for business purposes and would, therefore, be subject to limitations under the Policy.

b. To verify the facts of the claim.

c. To ascertain whether a subrogation claim would be possible against the owner of the rental storage facility at which the tools were located.

d. Determine whether the Morrises had the financial capacity to obtain the more than Thirty[-]Eight Thousand Dollars ($38,000.00) in tools and other personal items which they claimed were stolen.

(Appellant's App. pp. 195, 218–19, 246).

On October 31, 2000, Economy forwarded correspondence to the Morrises requesting their separate examinations under oath and asked them to provide documentation necessary for Economy to investigate and adjust the claim. On November 11, 2000, the Morrises, through their attorney, wrote to Economy and requested the transcripts of the statements previously given by the Morrises. The Morrises also advised Economy that the Proof of Loss form sent by Economy's claims adjuster was improper and asked for an appropriate Proof of Loss form. The Morrises' attorney did not advise Economy whether his clients would submit to examinations under oath. On November 21, 2000, Economy, by counsel, advised that the Morrises would be provided a copy of the transcript of any recorded statement taken in this matter upon completion of their separate examinations under oath and receipt of the signed transcripts of the same.

By letter dated November 29, 2000, counsel for the Morrises advised that examinations under oath would not be conducted until they had a chance to review the recorded statements. The Morrises' counsel further threatened that, unless a copy of the audiotape of the Morrises'

statements and an appropriate Proof of Loss form were received within ten days from the date of his letter, he would file suit on behalf of the Morrises. On December 27, 2000, the Morrises submitted their Proof of Loss form claiming the "Value of Loss" of the stolen items to be $38,038.28. (Appellant's App. p. 147).

On January 12, 2001, the Morrises filed their Complaint in Tort for Failure of Insurers to Deal in Good Faith. On March 13, 2001, Economy filed its Defendant's Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment. Economy's Counterclaim alleged, among other things, that the Morrises' failure to submit to examinations under oath and to provide requested financial documents and their act of filing a lawsuit were in violation of the express terms of the policy. On April 24, 2001, the Morrises filed their Plaintiffs' Reply to Counterclaim by Economy Fire and Casualty Company. On May 2, 2001, the Morrises filed their Plaintiffs' Motion for Leave to Amend their Complaint. The Amended Complaint included a count against Economy alleging that Economy breached the insurance policy by refusing to make any payment under it. On May 4, 2001, the Morrises filed their Motion to Compel. On May 23, 2001, Economy filed its Defendants' Amended Answer and Affirmative Defense.

On June 16, 2001, Economy filed its Motion for Protective Order and Response to Plaintiffs' Motion to Compel. On this same date, Economy filed its Memorandum in Support of Defendants' Motion for Protective Order and Response to Plaintiffs' Motion to Compel. On July 6, 2001, Economy filed its Motion to Compel Plaintiffs' Discovery Responses. On April 25, 2002, Economy filed its Defendants, Economy Fire and Casualty Company, St. Paul Fire and Marine Insurance Company, and Metropolitan Property and Casualty Insurance Company's Motion for Summary Judgment.

On May 3, 2002, the Morrises filed their Response to Defendants' Motion to Compel Production of Documents. On September 27, 2002, the Morrises filed their Motion for Summary Judgment on Defendants' Counterclaim for Declaratory Judgment. On October 25, 2002, Economy filed its Motion in Opposition to Motion for Summary Judgment on Defendant's Counterclaim for Declaratory Judgment.

On February 3, 2003, a hearing on the summary judgment motions was held. After hearing evidence from both sides, the trial court took the matter under advisement. On February 4, 2004, the trial court issued its Entry of Judgment on Defendant, Economy Fire & Casualty Company, St. Paul Fire & Marine Insurance Company, and Metropolitan Property and Casualty Insurance Company's Motion for Summary Judgment. In its Order, the trial court stated, in pertinent part:

And the [c]ourt having examined said Motion, the Briefs, and evidence submitted by the parties, having heard oral arguments, and being otherwise duly advised in the premises, now finds the following:

1. This matter was submitted to the [c]ourt upon Motion of the Defendants, Economy Fire and Casualty Company, St. Paul Fire and Marine Insurance Company and Metropolitan Property and Casualty Insurance Company.

2. That upon proper notice, all parties appeared by counsel.

3. That oral arguments were heard and evidence submitted.

4. That there exists no genuine issue as to the following facts:

   a. On April 16, 1997, Economy issued a homeowner's policy of in-

surance to [the Morrises], Policy No. HOO1322284.

b. The insurance policy sets forth the duties of the insured and requires the insured to attach all bills, receipts and related documents that justify figures in the inventory.

c. The insurance policy sets forth the duties of the insured and requires that as often as the insurer reasonably requires, the insureds must show the damage property; provide the insurer with records and documents requested and to submit to examination under oath, while not in the presence of any other insured.

d. The insurance policy also provides that no action can be brought unless the provisions have been complied with and the action is started within one year after the date of loss.

e. [The Morrises] made claim contending on or about May 30, 2000, several items of [the Morrises'] personal property were stolen from a storage unit rented by the [Morrises] in Cloverdale, Indiana.

f. [The Morrises] reported the theft to the Indiana State Police and claimed that the dollar value of the property stolen from the rental unit was approximately Fifteen Thousand Dollars ($15,000.00).

g. On October 31, 2000, Economy, by counsel, forwarded correspondence to [the Morrises] requesting to conduct the [Morrises'] separate examinations under oath and to provide documentation.

h. On November 29, 2000, counsel for the [Morrises] advised that examinations under oath would not be conducted until counsel for the

[Morrises] had a chance to review the recorded statements.

i. On December 27, 2000, [the Morrises] submitted their Sworn Statement in Proof of Loss claiming the value of the stolen items to be Thirty–Eight Thousand Thirty–Eight Dollars and 28/100 ($38,038.28).

j. On January 12, 2001, and without having submitted to examination under oath or providing requested documents, [the Morrises] filed their Complaint in Tort for Failure of Insurers to Deal in Good Faith.

k. [The Morrises] have failed to provide requested documentation and have never submitted to examination under oath.

5. [Economy is] entitled to summary judgment on [the Morrises'] Amended Complaint and [Economy's] Complaint for Declaratory Judgment.

(Appellant's App. pp. 10–2). Thus, the trial court granted summary judgment in Economy's favor and against the Morrises, as to all counts, and their Complaint for Declaratory Judgment.

The Morrises now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-moving party. *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912, 916 (Ind.Ct.App.2002). Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law. Ind. Trial Rule 56(C).

Once the moving party has met this burden with a prima facie showing, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact for trial. *Id.* Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Id.* The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Id.*

■■■ Insurance contracts are governed by the same rules of construction as other contracts. *Earl v. American States Preferred Ins. Co.*, 744 N.E.2d 1025, 1027 (Ind.Ct.App.2001). Accordingly, the proper interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment. *Id.* Although ambiguities are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning. *Id.* Additionally, the power to interpret contracts does not extend to changing their terms, and insurance policies in this state will not be given an unreasonable construction to provide added coverage. *Id.*

## II. *Breach of Contract*

### A. *Cooperation Clause*

First, the Morrises argue that the trial court erred in granting summary judgment in favor of Economy on their counterclaim for declaratory judgment. Specifically, the Morrises contend that they did not breach their insurance policy by refusing to provide Economy with additional documentation because Economy's request to review certain documents was unreasonable. The Morrises also claim that they would not submit to separate examinations until their attorney received their prior recorded statement given to Economy. As a result, the Morrises maintain that a genuine issue of material fact existed regarding this issue, and thus summary judgment was improper.

Conversely, Economy asserts that the Morrises failed to cooperate with Economy in its investigation of their claim, and therefore breached their insurance policy. In particular, Economy alleges that the Morrises intentionally refused to cooperate and their failure to cooperate prejudiced Economy in its investigation of their claim. Consequently, Economy contends that the trial court properly granted summary judgment on their counterclaim for declaratory judgment.

■■■ The Economy insurance policy, provides, in pertinent part:

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

\* \* \*

f. as often as we reasonably require:

(1) show the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examination under oath, while not in the presence of any other insured, and sign the same;

(Appellant's App. p. 115). Thus, sufficiently cooperating with Economy's investigation is a condition precedent to the company's obligations under the contract. Although this clause could prevent the Morrises from recovering from Economy, Economy has the burden of proving three things. First, Economy must establish that the Morrises breached the clause by intentionally and willfully failing to cooper-

ate in providing the requested documentation and submitting to examination. *Smithers v. Mettert*, 513 N.E.2d 660, 662 (Ind.Ct.App.1987). Second, Economy must establish its good faith efforts and diligence in obtaining the Morrises' cooperation. *Id.* Third, Economy must establish that the Morrises' failure to cooperate prejudiced Economy in its investigation of the claim. *Id.*

■ In the present case, the record does not support Economy's claim that the Morrises willfully and intentionally failed to adhere to the cooperation clause in the policy. Specifically, the record reveals that the Morrises adhered to each request that Economy made regarding documentation and proof of loss. It was only after Economy continued to request documents that the Morrises believed were outside of the scope of their claimed loss that the Morrises refused to provide Economy with any further documentation. Rather, the Morrises took the position that they would object to Economy's demand for additional documentation and await the trial court's ruling as to what documents they were required to produce. Particularly, the record indicates that the Morrises filed formal objections to several of the requests made by Economy, as they believed the demand was unfair, burdensome and oppressive, and also constituted an invasion of the Morrises' privacy. We cannot say that the Morrises' actions indicated a willful and intentional refusal to cooperate. *See Smithers*, 513 N.E.2d at 662. Instead, the evidence indicates only the Morrises' objection to the requested documentation, and does not establish the Morrises' refusal to cooperate. Furthermore, Economy must also establish that, as a matter of law, its request was reasonable. This Economy has failed to do. Consequently, we find that a genuine issue of material fact exists regarding this issue.

■ We further reject Economy's claim it was prejudiced by the Morrises' denial to submit to separate examinations under oath. Rather, the record shows that the Morrises informed Economy that they would submit to an examination under oath separately, after their counsel received their prior recorded statement. The record reveals that the Morrises' prior recorded statement was taken by Economy before the Morrises obtained trial counsel to assist them. The Morrises' attorney explained to Economy that those prior recorded statements were needed to aid in his representation of the Morrises. He further reminded Economy that Dirk was permanently disabled and Lisa was totally blind and suffered from severe fibromyalgia. Thus, the Morrises are completely dependent upon one another, *i.e.,* Lisa cannot read documents and must have them read to her by Dirk. We find that it was unreasonable and unfair practice for Economy to have the benefit of the transcripts and tapes of the Morrises' prior statement, while refusing to provide the same documents to the Morrises' counsel.

As mentioned above, when reviewing a summary judgment ruling, we construe the pleadings and designated materials in a light most favorable to the non-movant, giving careful scrutiny to ensure that the losing party is not improperly denied its day in court. *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1263 (Ind.Ct.App.2002). When viewed in the light most favorable to the Morrises as the non-movant in the summary judgment claim, we find this dispute over whether the Morrises willfully and intentionally failed to submit to separate examinations under oath to be a genuine issue of material fact. We note that Economy's claim of prejudice—that it was not able to properly investigate the Morrises' claim—is tenuously supported at best. For instance, the record reveals that

the Morrises never refused to submit to a separate examination under oath. Rather, the Morrises insisted that their counsel have access to their prior recorded testimony before they were required to give their statements to Economy.

Additionally, the record discloses that after Economy was ordered to provide the Morrises' counsel with transcripts of their prior recorded statements, the Morrises, by letter dated March 4, 2002, invited Economy's counsel to take their separate statements under oath. However, the record is devoid of evidence that Economy accepted the Morrises' invitation; rather, it appears that Economy has not contacted the Morrises to schedule their separate examinations. Therefore, we find that reasonable persons could differ as to whether the Morrises' alleged failure to cooperate so greatly prejudiced Economy as to entitle it to summary judgment.

Accordingly, we find that Economy's initial refusal to provide the Morrises with copies of their previously recorded statements was unreasonable and justified the Morrises' actions. Further, Economy has not shown that it was prejudiced in its ability to properly investigate the Morrises' claim. *See Smithers,* 513 N.E.2d at 662; *see also Miller v. Dilts,* 463 N.E.2d 257, 261 (Ind.1984) (where our supreme court held that an insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy). As a result, we find that the trial court's award of summary judgment to Economy on this issue was improper.

Based upon all of the above, we find that Economy has not shown that the Morrises willfully and intentionally refused to provide Economy with the necessary documentation so that it could continue its investigation of the Morrises' insurance claim. *See Smithers,* 513 N.E.2d at 663. Further, we hold that a genuine issue of material fact exists regarding the Morrises' failure to submit to separate examinations under oath as required by the insurance policy. Consequently, we conclude that the trial court's award of summary judgment in favor of Economy was not appropriate. T.R. 56(C).

### B. *Initiation of Lawsuit*

The Morrises further argue that the trial court erred in denying their motion for summary judgment on the issue of whether Economy was entitled to declaratory judgment. Specifically, the Morrises allege that a disputed issue of material fact exists as to whether they breached the insurance contract and whether Economy acted in bad faith. Thus, the Morrises allege that they were entitled to sue Economy in tort for bad faith and breach under the insurance contract to prevent the time limitations from running out on their claim.

Conversely, Economy contends that the Morrises breached the policy provisions by refusing to submit the requested documentation or to examination under oath; therefore, Economy claims that they owed no contractual duty to pay the Morrises. As a result, Economy maintains that the trial court properly found that there is no genuine issue of material fact regarding this issue. We disagree with Economy.

As we previously determined, Economy has not shown as a matter of law that the Morrises willfully and intentionally failed to submit documentation to Economy and to submit to separate examinations under oath. Rather, the Morrises reasonably awaited the trial court's ruling as to what documentation was necessary to produce. Also, the Morrises complied with Economy's request to give separate examinations under oath, after Economy had provided the Morrises counsel with their prior re-

corded statement. Thus, we held that a genuine issue of material fact exists regarding whether the Morrises failed to comply with the policy requirements of the insurance policy. Consequently, issues of fact as to whether the Morrises breached its contact preclude summary judgment in favor of Economy.

As such, we find that the trial court erred in granting Economy's motion for declaratory judgment. Particularly, Economy's motion was based on its claim that the Morrises breached the insurance contact, and therefore, that the Morrises were not entitled to bring a suit in tort against them, pursuant to the policy. However, since we have determined that genuine issues of material fact exist regarding whether the Morrises breached the insurance contract, there is insufficient evidence as a matter of law to conclude that the Morrises were not entitled to file a lawsuit before the one-year limitations period expired. Consequently, we find that the trial court erred in denying the Morrises' motion for summary judgment, and granting Economy's motion for declaratory judgment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court err in awarded summary judgment in favor of Economy and against the Morrises.

Reversed and Remanded.

KIRSCH, C.J., and NAJAM, J., concur.