In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

Nos. 04-3287 & 04-3288

EMPLOYERS MUTUAL CASUALTY COMPANY
and HAMILTON MUTUAL INSURANCE COMPANY,

*Plaintiffs-Appellees*,

*v.*

JOHN SKOUTARIS, d/b/a OPEN FLAME RESTAURANT,

*Defendant-Appellant.*

—————————

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
Nos. 02 C 112 & 01 C 601—**Paul R. Cherry**, *Magistrate Judge.*

—————————

ARGUED APRIL 12, 2005—DECIDED JULY 13, 2006

—————————

Before MANION, ROVNER, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* On April 7, 2000, a fire ravaged the Open Flame Restaurant ("Open Flame"), a Valparaiso, Indiana establishment owned and operated by John Skoutaris. Hamilton Mutual Insurance Company ("Hamilton Mutual"), a subsidiary of Employers Mutual Casualty Company, insured the building, business personal property, and business lost income. Hamilton Mutual, an Ohio corporation with its principal place of business in Ohio, filed a declaratory judgment action in 2001 in the Northern District of Indiana, claiming that Skoutaris failed to abide by

the insurance policy provisions governing Skoutaris's duty
to cooperate and duty to submit to an examination under
oath. Skoutaris, in turn, brought claims of breach of contract
and bad faith against Hamilton Mutual. The district court
eventually granted Hamilton Mutual's motion for summary
judgment and denied Skoutaris's motion for partial sum-
mary judgment. Skoutaris appeals. We affirm.


I

A

John Skoutaris opened the Open Flame on February 26,
2000. He had purchased the Valparaiso building from Porter
National Bank for $225,000 and had personally made a
variety of improvements before opening for business.
Skoutaris held insurance policies from both Hamilton
Mutual and Ohio Casualty Group covering damage to the
Open Flame, and the policies contemplated dividing any
loss between the two insurance companies.

As this case involves the duties and procedures under the
Hamilton Mutual policy once a claim is filed, we examine
the relevant policy provisions in detail. The Hamilton
Mutual policy covered three distinct areas of loss: (1)
building; (2) business personal property; and (3) business
income.[1] When making a claim under the Hamilton Mutual
policy, Skoutaris had certain obligations:

---

[1]  The "business personal property" covered by the policy refers
to such items as furniture, machinery, equipment, and stock. The
policy's lost business income coverage provided for payment of
that income that would have been earned but for the interruption
caused by damage to the restaurant.

a.   You must see that the following are done in the event of loss or damage to Covered Property:

(2)   Give us prompt notice of the loss or damage. Include a description of the property involved.

. . .

(5)   At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

(6)   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

. . .

(8)   Cooperate with us in the investigation or settlement of the claim.

b.   We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

In addition to these provisions relating to the insured's duties, the Hamilton Mutual policy also provided an appraisal process to determine the value of a particular loss. The policy did not call for the parties to automatically

undergo the formal appraisal process upon the filing of a claim. Rather, the parties had the opportunity to conduct some preliminary investigation and attempt to resolve the claim in a mutually agreeable fashion. However, the policy stated:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.   Pay its chosen appraiser; and
>
> b.   Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

In addition, Skoutaris elected for replacement cost coverage, which entitled him to receive the full replacement cost of the destroyed property, but only after the property was repaired or replaced. To allow an insured to begin reconstruction after a loss, one aspect of this coverage was that an insured could elect to receive a payment of the actual cash value, a depreciated portion of the full replacement cost, in advance of the full replacement cost payment. Having received such an actual cash value payment, an insured could only recover the remainder of the replacement costs after all repairs or replacements were made.

B

Open Flame turned out to be an unfortunately apt name, as the restaurant suffered a massive fire on April 7, 2000. Hamilton Mutual and Skoutaris both retained the services of adjusters to investigate the fire and determine the loss. There was no suggestion of arson.

The two adjusters produced radically different damage assessments. Skoutaris's adjuster found that the building, including the basement, was a complete loss, with a replacement cost value of $642,700, and concluded that the business personal property loss was $346,767. Hamilton Mutual (through its own adjuster) responded with a substantially lower assessment and claimed that Skoutaris's submission lacked the necessary detail or documentation to support the figures. Hamilton Mutual also concluded that the basement was not a total loss. It found that the replacement value of the building was $310,231.21, while pegging the replacement cost value of the business personal property at $158,292.57. Hamilton Mutual's adjuster explained that he assigned values to the business personal property items claimed by attempting to match the item to an invoice, or, if an invoice could not be found, looking up the replacement cost in restaurant catalogs. Hamilton Mutual offered an actual cash value payment of approximately $128,000 on its portion of the claim.[2] Eventually Skoutaris accepted the $128,000 as the actual cash value payment under the Hamilton Mutual policy.

Although Skoutaris accepted Hamilton Mutual's payment, the parties continued to disagree about the replacement

---

[2] As stated above, Hamilton Mutual was only responsible for half the loss based on the coverage provided by Ohio Casualty Group.

value of the building and business personal property destroyed in the fire. For several months, the parties exchanged correspondence on this subject, culminating in a November 21, 2000, meeting. At the meeting, the parties made some progress towards a resolution (Hamilton Mutual agreed to consider the basement a complete loss and raise its valuation of the building loss commensurately), but ultimately the parties continued to have serious disagreements about the value of the business personal property. Specifically, Hamilton Mutual took issue with Skoutaris's valuations of the business personal property because of the little supporting documentation and the fact that Skoutaris's results conflicted with the values determined by Hamilton Mutual's adjuster using catalogs and industry standards. Hamilton Mutual repeatedly asked for more documentation, as well as any response by Skoutaris or his adjuster explaining how they determined value.

Thereafter, Hamilton Mutual received some additional documentation and raised the replacement cost value of the business personal property to approximately $196,000, based on the inclusion of certain items previously thought to be leased. Meanwhile, Skoutaris also submitted a revised business personal property replacement cost valuation of approximately $342,000. Although Skoutaris turned over further documents to Hamilton Mutual in January 2001, Hamilton Mutual believed most of these were bills for purchases of food rather than confirmation of prices for improvements made to the building or business personal property.

## C

Given the lengthy period of investigation and the persistent gap between the parties' estimates of the replacement

cost value, Hamilton Mutual decided to proceed with appraisal, formally initiating the process in a January 22, 2001 letter. Hamilton Mutual indicated in that letter that it would be represented by an attorney and that it needed Skoutaris's examination under oath (an "EUO"). Hamilton Mutual appointed James Stivers as its appraiser, while Skoutaris retained the services of Tim Zeak. Stivers received from Hamilton Mutual its full file of materials, which he believed were the same materials given to the initial appraiser. According to Stivers, any additional materials should have come from Zeak, though Stivers received little information from him.

While the appraisal process started out cordially, relations between the parties deteriorated. Hamilton Mutual, through its attorney, wrote Skoutaris's attorney in February 2001, requesting a date for the EUO, as well as a litany of documents, including any pre-purchase appraisals of the property by Porter National Bank (the previous owner) and the specific figures relied upon during the valuation process. Over the next three months, Hamilton Mutual's attorney sent three additional letters asking for the responsive documents so that he could take Skoutaris's EUO.

Beginning in May 2001, the correspondence exchanged between the representatives of the parties began to crystallize certain positions regarding the EUO and further production of documents. Over the next five months, Hamilton Mutual consistently and repeatedly asserted that Hamilton Mutual had a right to take the EUO of Skoutaris on any and all matters and sought the documents requested in the February letter, including a detailed list of what was destroyed in the fire. Hamilton Mutual felt that the initiation of the appraisal process had no effect on its right to receive documents or take the EUO.

Hamilton Mutual also reminded Skoutaris's representatives several times that failure to comply would result in the denial of his claim. Between May and October, Hamilton Mutual's attorney sent seven letters asking for documents and attempting to set Skoutaris's EUO. In response, Skoutaris indicated that he had previously produced all documents in his possession to Hamilton Mutual's initial adjuster and that the documents Hamilton Mutual sought were either duplicative or had been destroyed. Skoutaris's representatives also suggested that Hamilton Mutual was only entitled to documents or an EUO relating to the business interruption claim, and not the building or business personal property claims, since the parties were in the appraisal process.

Even while the exchanges between the parties were growing testier, the appraisal process continued. As the parties were not able to agree upon an umpire, Hamilton Mutual proceeded under the appraisal clause in the policy, which provided that the parties could request a court of competent jurisdiction to appoint an umpire. Hamilton Mutual filed such a petition in the Porter County Superior Court, the Indiana state court with jurisdiction over Valparaiso, and that court appointed attorney Russell Millbranth as umpire in August 2001. Stivers felt that he (Stivers) did not have enough documentation for a meaningful appraisal process, but Millbranth continued nonetheless.

By late September and early October 2001, the tension between the parties over Skoutaris's cooperation boiled over. After several aborted attempts to set the EUO, Hamilton Mutual resolved to examine Skoutaris on October 3, 2001. However, in a letter on September 27, 2001, Skoutaris's attorney stated that Hamilton Mutual had received all

documentation by November or December 2000, and contested whether Hamilton Mutual had a right to an EUO.

> I am completely bewildered as to your continuing demand to take my client's statement when the matter is, at your option and election, now pending before an umpire. Please provide me with the authority which supports your legal conclusion that your client continues to have right to take the statement when your client elected to place the matter before an umpire for a decision.

Hamilton Mutual's attorney responded on October 1, 2001, that Hamilton Mutual had never received a complete list of all improvements to the property, the specific figures utilized by Skoutaris's appraiser that produced the $630,000 replacement value, a list of all items of personal property that were included in the purchase price of the building from Porter National Bank, and a list of expenses from the date of purchase to the date of loss. Regarding Skoutaris's claim that the request for EUO was improper, Hamilton Mutual's attorney stated that the policy clearly provided a right to take an EUO. Finally, Hamilton Mutual's attorney suggested that Hamilton Mutual would be unable to make an appraisal submission with regard to the damage evaluation "without the documents requested and your client's statement under oath." No EUO occurred on October 3.

In an October 11 letter, Skoutaris's attorney replied that Hamilton Mutual's letter was the first time that Hamilton Mutual had specifically stated that it was missing a complete list of improvements. Skoutaris's attorney noted that the list of business personal property submitted by Skoutaris's adjuster, as well as the various building evaluations, should have been sufficient."It is beyond me how your client can now say that they do not have a list of all

improvements made when they based their appraisal and
made partial payment a year ago. . . . I have to consider
your request as again being evidence of your client's bad
faith . . . ." Skoutaris's attorney further suggested that
Hamilton Mutual's initial adjuster had received all docu-
mentation in November or December 2000, and had, in fact,
removed certain documents without authorization, which
had never been returned. Turning to the EUO, Skoutaris's
attorney stated that Hamilton Mutual had met with
Skoutaris about the building and business personal property
claims in November 2000, and that Hamilton Mutual should
have asked any questions at that time. Finally, Skoutaris's
attorney suggested that Hamilton Mutual alone was to
blame if it did not have sufficient information to proceed
with the appraisal.

At a later deposition, Skoutaris admitted that he was
aware that Hamilton Mutual wished to take his EUO for
several months but decided not to submit based on advice
of counsel. Moreover, Skoutaris also knew that Hamilton
Mutual wanted further documentation, though he was
unaware whether any further documents were produced by
either his initial appraiser or lawyer.


D

On November 2, 2001, Hamilton Mutual rejected
Skoutaris's claim based on his failure to appear for an EUO
and his refusal to produce either copies of requested records
or a statement advising which documents were destroyed.
According to Hamilton Mutual, these actions constituted a
material breach of the insurance policy, and the company
refused to pay any additional benefits. Three days later,
Hamilton Mutual filed a declaratory judgment action in the
Northern District of Indiana, seeking a judgment that

Skoutaris had breached the contract and Hamilton Mutual was not required to pay any additional sums under the policy.

Hamilton Mutual also withdrew from the appraisal process. Despite Hamilton Mutual's absence, Millbranth proceeded with the appraisal process, which he conducted in stages. On November 29, 2001, Millbranth decided that the replacement cost of the building was $547,900, a decision which was filed in Porter County Superior Court on December 11, 2001. At that point, Ohio Casualty Group was still an active participant in the appraisal and was being represented by Stivers, who had earlier been retained by Hamilton Mutual. On February 14, 2002, Skoutaris's attorney offered Hamilton Mutual a chance to rejoin the appraisal process regarding the business personal property and business interruption claims and offered Skoutaris for an EUO. Before the final stage of the appraisal concluded, Ohio Casualty Group settled its liability on the remaining issues, leaving only the portion attributable to Hamilton Mutual. On March 19, 2002, Millbranth determined that Hamilton Mutual was responsible for $172,500 in business personal property damage and $50,000 for the business income loss.[3] Skoutaris eventually opened a replacement restaurant on September 8, 2003.

While the appraisal process was winding down, an issue regarding the judgment arose before the Porter County Superior Court, which had appointed Millbranth. After Millbranth submitted the appraisal of the building replacement cost to the Porter County Superior Court, that court

---

[3] To be completely clear, the record indicates that Skoutaris received payment in settlement of his claims from Ohio Casualty Group, which had contracted to pay half the claim amounts, as well as the $128,000 initial payment from Hamilton Mutual.

indicated that it would enter judgment on the appraisal. Hamilton Mutual objected and asserted that the Porter County Superior Court had no jurisdiction to enter such an award, and the court agreed. On February 21, 2002, Skoutaris filed claims of breach of contract and bad faith by Hamilton Mutual in the Porter County Superior Court, which Hamilton Mutual subsequently removed to the Northern District of Indiana and designated as counter-claims to Hamilton Mutual's federal declaratory judgment action. The parties subsequently consented to a federal magistrate judge presiding over the action.

As part of the federal lawsuit, Skoutaris was deposed in 2003 about the Open Flame, as well as his decisions not to provide further documentation or attend an EUO. During his deposition, Skoutaris revealed that most of the improvements made to the Open Flame were done by himself and that he paid cash for many items of business personal property and materials for building improvements. He further testified that he was assisted in his renovations of the building by two temporary employees whom he also paid in cash. The deposition revealed that Skoutaris had few details or documents supporting his valuation of different items in the Open Flame.

The parties each moved for summary judgment. Hamilton Mutual sought a judgment that the failure to attend the EUO and produce the documents was a material breach excusing it from any further obligations under the policy and that it acted in good faith. Skoutaris, on the other hand, wanted a judgment declaring that he cooperated in the investigation of the claim, finding the appraisal to be binding, and requiring Hamilton Mutual to pay the amount of the appraisal. The district court granted summary judgment to Hamilton Mutual, finding that the breach of the

EUO was a material breach that excused any further performance. The district court did not reach the issue of whether the failure to produce documents also breached the insurance policy. The district court further found that, since Hamilton Mutual was not liable to Skoutaris, Hamilton Mutual was neither bound by the appraisal amount nor was it required to pay any award resulting from the process.

## II

We conduct de novo review of the district court's decision granting Hamilton Mutual's motion for summary judgment and denying Skoutaris's partial motion for summary judgment. *Employers Ins. of Wausau v. Stopher*, 155 F.3d 892, 895 (7th Cir. 1998). Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As this case involved cross-motions for summary judgment, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration was made. *See Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 307 (7th Cir. 1998). Accordingly, we review the record in the light most favorable to Skoutaris, drawing all reasonable inferences from those facts in his favor, and reversing if we find a genuine issue concerning any fact that might affect the outcome of the case.

As this case is brought under diversity jurisdiction, we apply the law of the forum state, Indiana, since neither party has challenged the district court's choice of law. *See Wausau*,

155 F.3d at 895; *see also Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 942 (7th Cir. 2003); 28 U.S.C. § 1332. "We must apply the law of the state as we believe the highest court of the state would apply it." *Wolverine*, 325 F.3d at 942; *see also State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).

Skoutaris presents several issues on this appeal. First, he asserts that the district court used the incorrect standard in analyzing whether he breached the policy by refusing to submit to an EUO. Second, Skoutaris contends that the district court erred when it denied his motion for partial summary judgment to enforce the umpire's decision in the appraisal proceeding. Third, he claims that, by conceding the existence of a valid claim, Hamilton Mutual waived strict compliance with the cooperation provisions of the policy. Finally, Skoutaris argues that the district court improperly granted summary judgment to Hamilton Mutual on Skoutaris's claim of breach of the duty of good faith. We examine each in turn.

### A

Skoutaris first contends that the district court misapplied Indiana law by failing to require that Hamilton Mutual show actual prejudice stemming from Skoutaris's breach of the EUO clause. When arguing before this court, the parties properly briefed this issue in light of relevant cases from the Indiana Court of Appeals, since the Supreme Court of Indiana had not ruled on this issue previously. *See Wausau*, 155 F.3d at 895. That has changed during the pendency of this appeal, and thus, to a large extent, subsequent events have overtaken the parties' arguments. *See Morris v. Econ.*

*Fire & Cas. Co.*, No. 49S02-0503-CV-98, ___ N.E.2d ___, 2006 WL 1530026 (Ind. June 6, 2006).[4]

Skoutaris asserted that the Supreme Court of Indiana would treat the breach of an EUO provision in an identical fashion to the breach of a cooperation clause in a contract. Previously, the Supreme Court of Indiana clearly established what an insurer needs to prove in a case of a breach of a policy's cooperation clause. *See Miller v. Dilts*, 463 N.E.2d 257, 261 (Ind. 1984). Specifically, "[a]n insurance company must show actual prejudice from an insured's noncompliance with the policy's cooperation clause before it can avoid liability under the policy." *Id*. Skoutaris contended that since cooperation clauses and the EUO clauses both allow an insurer to recover information from an insured, they should be subject to the same standard. The district court erred, according to Skoutaris, because it rested its decision solely on his breach of the EUO clause, and never considered whether that breach prejudiced Hamilton Mutual.

The Supreme Court of Indiana, however, subsequently decided to treat EUO clauses in a different way than cooperation clauses. *See Morris*, at *2. In *Morris*, the Supreme Court of Indiana considered the failure of married insureds to submit to examinations under oath as expressly required in their insurance contract. *Id*. at *1-2. The EUO provision in that case was contained in a portion of the contract detailing the insureds' duties after a loss. *Id*. at *2. The Indiana Court of Appeals had analyzed the breach of this EUO clause

---

[4] After the Supreme Court of Indiana granted transfer in the *Morris* case, we held our consideration of the present appeal until after the Supreme Court of Indiana ruled, given the significant overlap between the major issues.

using the framework developed by Indiana courts in cooperation clause cases, and thus required a showing of prejudice. *Morris v. Econ. Fire & Cas. Co.*, 815 N.E.2d 129, 135 (Ind. Ct. App. 2004). The Supreme Court of Indiana rejected this approach, stating: "[t]his case does not involve a 'cooperation clause.'" *Morris*, 2006 WL 1530026, at *2. The Supreme Court of Indiana proceeded to expressly distinguish the EUO provision from a cooperation clause, which it defined as a "policy provision requiring that the insured assist the insurer in investigating a claim." *Id*. (quoting Black's Law Dictionary 359 (8th ed. 2004)). The EUO provision, on the other hand, was an "entirely separate provision that explicitly requires the policy holder to perform specific duties." *Id*. The insured's failure to comply with the EUO clause resulted in a material breach of the contract. *Id*. at 3. ("In expressly refusing to submit to examinations under oath until their prior recorded statements were furnished by [the insurance company], the [insureds] breached their policy contract."). In such a case, "prejudice is not a necessary consideration." *Id*. at *2. In the context of a breach of an EUO clause, therefore, the Supreme Court of Indiana has established that an insurance company need only show a material breach to prevail.

Applying this rule to the present case, Skoutaris clearly breached the EUO clause through his actions over a nine- or ten-month period. As in the *Morris* case, the EUO clause here is contained in a section of the contract setting forth the insured's "Duties in the Event of Loss or Damage" and imposes a specific duty on the insured to submit to an examination under oath as reasonably required. Using catalogs, Hamilton Mutual initially valued the building and business personal property of the Open Flame several hundred thousand dollars less than Skoutaris. Once it became clear that the parties could not bridge the gap,

Hamilton Mutual invoked the appraisal process and requested an EUO to find out exactly how Skoutaris came up with his figures (as most documents were ostensibly destroyed in the fire). Despite over ten letters from Hamilton Mutual and its attorney, including many referencing the specific policy provision allowing an EUO, Skoutaris would not submit to an EUO. Skoutaris was aware throughout that Hamilton Mutual wanted his EUO and nonetheless he refused. Although the policy never qualified the time period for an EUO, Skoutaris claimed, apparently without contractual or legal support, that the EUO would be improper and that his off-the-record discussions in November 2000 were all that Hamilton Mutual was entitled to receive. The contract does not allow Skoutaris to ignore his express duties because he felt that he had done enough. *See id*. at *2-3 ("[T]he contract does not provide that an insured can impose this prerequisite upon the insurer before complying with agreed duties."). Skoutaris's intransigence constituted a willful and intentional breach of the EUO clause, and the district court properly granted summary judgment in favor of Hamilton Mutual on this ground.[5]

---

[5] The perplexing question is why exactly Skoutaris decided to pursue such a bizarre strategy, seemingly daring the insurance company to deny his claim for failure to submit to an EUO. Although only Skoutaris knows the answer, a partial explanation might be found in the deposition taken in this civil litigation following the denial of the claim. At several points, Skoutaris was quite unclear about the prices he paid for different objects and revealed that he made several black market purchases. Further, Skoutaris indicated that he paid straight cash for several laborers who assisted him with various of the building improvements.

B

Having resolved the central issue, we now address the remaining arguments. First, Skoutaris asserts that Hamilton Mutual was bound by the appraisal despite Hamilton Mutual's withdrawal from the process after Skoutaris's breach of the EUO and before the award was ever determined. Skoutaris believes that once the appraisal process was invoked, Hamilton Mutual could not avoid its results. Given our ruling that Hamilton Mutual had no further liability under the policy because of the material breach of the EUO, Hamilton Mutual obviously is not bound by the results of the post-breach appraisal process. Further, Skoutaris's contention runs aground on the language of the contract. "Clear and unambiguous policy language must be given its ordinary meaning." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). Here, the policy clearly states, "[i]f there is an appraisal, we [Hamilton Mutual] will still retain our right to deny the claim." Hamilton Mutual denied the claim, as was its contractual right, before the appraisal was completed. Hamilton Mutual acted properly under the contract and was not bound by an appraisal on a claim it had already denied under the policy.

Skoutaris also argues that Hamilton Mutual waived strict compliance with the cooperation provisions by making an initial offer and payment on the claim. Skoutaris bases his argument on venerable Indiana precedent that holds once an insurer undertakes its investigation and enters into an appraisal process, the insurer can no longer deny the claim based on a failure to supply a formal proof of loss. *See Providence Wash. Ins. Co. v. Wolf*, 80 N.E. 26, 28 (Ind. 1907). Skoutaris attempts to stretch this rather unremarkable rule to cover what would be a very remarkable proposition—that once an insurance company had signaled acceptance of some loss, no cooperation would be required. We

decline the opportunity to contort Indiana law in such a fashion. Obviously, the acceptance of some claim should not remove the obligation of the insured to cooperate with the insurer, which is necessary to determine the appropriate loss value.

This brings us to Skoutaris's final argument, that Hamilton Mutual breached its duty of good faith and fair dealing. The Supreme Court of Indiana has held that the "obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993). "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith." *Id*. at 520. Hamilton Mutual did not breach its duty of good faith. Rather, Hamilton Mutual valued the amount of loss based on the limited information available to it and, during November and December 2000, repeatedly asked Skoutaris to explain the differences in his valuation. Further, once the appraisal process started, Hamilton Mutual offered Skoutaris repeated opportunities to avoid rejection of the claim. Over several months, Hamilton Mutual continually asked for documents necessary for an EUO, as well as the EUO itself, and warned of the likely consequences of Skoutaris's litigation strategy. Hamilton Mutual acted reasonably and properly as it attempted to resolve this claim. Skoutaris is solely responsible for this unnecessary result.

III

Skoutaris had the opportunity and obligation under his insurance policy to provide an examination under oath to Hamilton Mutual in order for the insurer to reach some resolution on his claim. Hamilton Mutual made almost a year of good faith attempts to secure this examination, but Skoutaris, for whatever reason, would not budge. This made little sense as the issues between the parties seemed ripe for a reasonable settlement. Nonetheless, Skoutaris's breach of the examination under oath clause terminated all of Hamilton Mutual's further liability. We therefore AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*